IN RE: Frances Edith JACKSON,
Debtor.

Matthew E. Jackson Jr. and Velma
L. Jackson, Plaintiffs,

v.

Frances Edith Jackson, Defendant.

Case No. 14–72501–PWB
Adversary Proceeding No.
15–5100–PWB

United States Bankruptcy Court,
N.D. Georgia, Atlanta Division.

Signed April 8, 2016

Filed April 11, 2016

355

Matthew E. Jackson, Jr., pro se.

Velma L. Jackson, pro se.

Schuyler Elliott, Schuyler Elliott & Associates, Inc., Norcross, GA, for Defendant.

**ORDER DENYING THE PLAINTIFFS' MOTION FOR ABSTENTION AND REMAND, GRANTING THE DEBTOR'S MOTION FOR SUMMARY JUDGMENT, AND DENYING THE PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Paul W. Bonapfel, U.S. Bankruptcy Court Judge

This is a long order. Its length is not attributable to the need for analysis of complex or novel legal issues or the pres-ence of critical factual disputes. To the contrary, this proceeding involves the simple application of fundamental legal principles of federal and bankruptcy law and procedure to undisputed facts.

Rather, this Order is long because of the nature of the numerous factual allegations and legal contentions that the Plaintiffs—who are Pennsylvania lawyers but are appearing *pro se* in this proceeding—have made in the 59 paragraphs of their complaint. Most of their factual allegations are wholly unsupported by the record; most of their legal theories are frivolous. The Court is compelled to set forth almost all of their allegations and contentions verbatim and specifically address the deficiencies of each one.

## I. INTRODUCTION

### A. Background and the District Court Litigation

The Plaintiffs in this adversary proceeding are Matthew E. Jackson, Jr., and Velma L. Jackson, the brother and sister of the Chapter 7 debtor and Defendant, Frances Edith Jackson. The action involves a transfer in February 2000 by their mother, Sarah Jackson, of real property known as 339 Little Street, Sewickley, Pennsylvania, 15143 (the "Property") to the Debtor and the claims that the Plaintiffs brought against the Debtor in June 2013 in the United States District Court for the Western District of Pennsylvania with regard to the transfer and the Property.[1] Part II(A) further describes the circumstances surrounding the transfer of the Property, and Part II(B) further dis-

---

1. *Jackson v. Jackson,* Civil Action File No. 2:13–cv–00746–CB–RCM (the "District Court Litigation"). With the agreement of the parties, this Court has incorporated the entire record in the District Court Litigation as part of the record in this adversary proceeding. Order (July 29, 2015) [Doc. 15]. The Court refers to the docket in the District Court Litigation as "D. Ct. Doc."

cusses the details of the District Court Litigation.

In the complaint (the "D. Ct. Complaint")[2] in the District Court Litigation, the Plaintiffs asserted that their mother had intended that the Debtor hold title to the Property for the benefit of the Plaintiffs, the Debtor, and two other siblings who were not parties to the District Court Litigation and are not parties here. The Plaintiffs also asserted nine other claims against the Debtor for: unjust enrichment; breach of duty to keep informed; breach of duty of loyalty and to avoid self-dealing; breach of duty to exercise reasonable care and prudence; promissory estoppel; intentional infliction of emotional distress; fraud and conversion of property and funds of Velma Jackson; fraud; and invasion of privacy.

On June 4, 2014, the Magistrate Judge assigned to the proceeding issued a Report and Recommendation (the "Mag. R & R")[3] that recommended (1) the grant of summary judgment in favor of the Plaintiffs on their claim for imposition of a constructive trust and (2) the *sua sponte* grant of summary judgment against the Plaintiffs on all other counts of their complaint. With re-

gard to the constructive trust, the Magistrate Judge recommended an accounting with regard to payments the parties had made for taxes and other matters relating to the Property and that any conveyance of the Property be made conditional upon payment of the expenditures.

The District Court on August 15, 2014, entered a Memorandum Order (the "District Court Order")[4] that adopted the Report and Recommendation as its ruling and directed further proceedings with regard to the accounting. Although it does not appear that the District Court entered a judgment, the Plaintiffs appealed the District Court Order to the United States Court of Appeals for the Third Circuit on September 12, 2014.[5]

An evidentiary hearing before the Magistrate Judge on the accounting was scheduled for November 17, 2014. The Debtor filed her Chapter 7 petition in this Court on November 13, 2014, however, and the evidentiary hearing did not go forward.

**B. Debtor's References to the Property and to the District Court Litigation in Her Bankruptcy Papers**

The Debtor referred to her interest in the Property and to the District Court

---

**2.** Complaint (June 3, 2013) [D. Ct. Doc. 1]. A copy of the complaint is attached as Exhibit A to Debtor's Memorandum in Support of Motion to Dismiss Plaintiff's Complaint [Doc. 5–1 at 16].

**3.** Report and Recommendation (June 4, 2014) [D. Ct. Doc. 37]. A copy of the Report and Recommendation is attached as Exhibit B to Debtor's Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint [Doc. 5–1 at 54].

**4.** Memorandum Order (Aug. 15, 2014) [D. Ct. Doc. 43]. A copy of the Memorandum Order is attached as Exhibit C to Debtor's Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint [Doc. 5–1 at 81]. The Memorandum Order and the Magistrate Judge's Report and Recommendation have been published as a single document. *Jack-*

*son v. Jackson,* 2014 WL 4060571 (W.D.Pa. Aug. 15, 2014).

**5.** Notice of Appeal (Sept. 12, 2014) [D. Ct. Doc. 45]. On September 25, 2014, the Clerk for the Third Circuit entered an Order stating the District Court Order may not be final (and therefore not appealable) within the meaning of 28 U.S.C. § 1291 and directing the parties to file responses addressing the issue of finality. Order, *Jackson v. Jackson,* No. 14–3910 (3d Cir. Sept. 25, 2014). The Plaintiffs filed a response on October 9, 2014. Appellants' Written Response to the Question of Whether the Order Appealed From is Final, No. 14–3910 (3d Cir. Oct. 9, 2014). The Debtor did not respond before filing her bankruptcy petition.

Litigation in several places in her Statement of Financial Affairs ("SOFA") and Schedules of Assets and Liabilities ("Schedules").

SOFA No. 4 requires a debtor to list pending suits. The Debtor's response to this item [6] lists the complaint filed against her by the Plaintiffs in the District Court Litigation, with its complete civil action file number. With regard to its status or disposition, she stated: [7]

> Ruled on 10/2014 for constructive trust to be set up making Debtor 1/5 owner and that accounting be filed to determine the share of expenses. 11/2014 appeal filed by Plaintiffs.

Schedule A directs a debtor to list her interests in real property. In addition to interests in other real estate, the debtor described her interest in the subject property on Schedule A [8] as follows:

> Small single family home: 339 Little Street, Sewickley, PA 15143.
>
> Deeded to Debtor prior to her mother's death, Ordered by Judge to be split 5 ways between siblings and ordered accounting, siblings all living in property (2) Deeds: Land with Gagage [sic] adjoined to land with small house.

She stated that the nature of her interest in the Property was "warranty deed."

Schedule B, No. 16, requires a debtor to list "accounts receivable." In this part of her Schedule B,[9] the Debtor stated:

> Possible reimbursement to Debtor for money paid to maintain home in PA for the previous 12 years prior to Judges [sic] ruling 10/2014. Accounting ordered by Judge 10/2014.

The Debtor did not list the Plaintiffs as holding an unsecured claim against her on Schedule F, but she did list them as co-debtors on Schedule H.

## C. Summary of the Plaintiffs' Requests for Relief in this Adversary Proceeding and the Reasons They Are Not Entitled to Any Relief

The Plaintiffs filed their complaint initiating this adversary proceeding on February 13, 2015. Parts II(C) and IV(B) describe the complaint in detail.

The complaint contains 59 paragraphs that are not broken down into counts. In the prayer for relief, the Plaintiffs request: [10]

> a. that the Court find that the Defendant holds no equitable interest in the Sewickley property and that all of the equitable interests in the Sewickley property are exempt from attachment and are excluded from the bankruptcy estate under 11 U.S.C. § 541(d);
>
> b. that the Court find that Defendant, having submitted false and misleading information on her bankruptcy petition, cannot discharge any debt associated with those false statements;
>
> c. that, in the event that the Court finds that the sole purpose of Defendant's bankruptcy filing was to defeat the action brought by Plaintiffs' [sic] to recover the Sewickley property from Defendant, the Court dismiss Defendant's bankruptcy petition or covert [sic] it to a bankruptcy proceeding under Chapter 11 or Chapter 13;
>
> d. that the Court find that, under 11 U.S.C. § 523, Defendant cannot dis-

---

6. Case No. 14–72501, Doc. 1 at 8.

7. She also noted that the Plaintiffs had filed a motion to vacate referral of the litigation to the Magistrate Judge.

8. Case No. 14–72501, Doc. 1 at 15.

9. Case No. 14–72501, Doc. 1 at 17.

10. Complaint prayer for relief [Doc. 1 at 13].

charge any debt or judgment against Defendant as a result of her actions in a fiduciary capacity with respect to the Sewickley property; and

e. that the Court grant such further relief that the Court deems appropriate.

A number of motions, including the Plaintiffs' motion for abstention and remand to the Third Circuit and motions for summary judgment, are pending. The Court sets forth in later parts detailed descriptions of the proceedings in this adversary proceeding and its rulings on the motions that have been filed. In particular, Part III states the reasons for denial of the Plaintiffs' motion for abstention and remand, and Part IV explains why, based on the undisputed material facts and applicable law, the Plaintiffs are not entitled to any of the relief they seek and the Debtor is entitled to summary judgment.

Although dealing with the various substantive and procedural positions the Plaintiffs have taken in this case requires extensive discussion, the results are actually quite simple. The Court here summarizes its disposition with regard to the merits.

With regard to the Plaintiffs' request in paragraph (a) that the Court determine that the Debtor has no interest in the Sewickley property, the fundamental problem with the complaint is that it does not seek relief against the Chapter 7 Trustee, who is the proper party to assert any interest in property of the Debtor's estate and to defend any claims that it is not.

It is noteworthy that the Debtor did not claim any exemption in this property and that the trustee has taken no action in this Court to attempt to liquidate any interest the Debtor has for the benefit of creditors. Indeed, the Trustee has filed a report of no distribution, indicating that any interest of the Debtor will be abandoned as property of the estate by operation of law upon the closing of this case.[11]

If the Plaintiffs' purpose was to proceed with the litigation in the District Court, their proper—and simple—remedy would have been to file a motion for relief from the automatic stay of 11 U.S.C. § 362(a) to permit that to happen, naming the Trustee and the Debtor as respondents. The Trustee would have either opposed the motion, consented to it, or possibly not responded at all. Absent some contention by the Trustee that this Court should revisit another court's determination of the issue—an unlikely result—the only question would be when the stay would be modified to permit the District Court Litigation to proceed. The Trustee's decision not to attempt to liquidate the Debtor's interest in the property strongly indicates that the Trustee's most likely response would have been to consent to, or not oppose, immediate stay relief.

Nothing indicates that the Debtor would have opposed a motion for relief from the stay either. Even if she had, any opposition would have been unavailing in the absence of opposition from the Trustee. She did not claim her interest as exempt, so no bankruptcy purpose could have possibly existed for this Court to get involved in the dispute.

In short, it is as certain as things can be in a bankruptcy case that the filing of a motion for relief from stay would have resulted in an order shortly after its filing that permitted the District Court Litigation to proceed with this bankruptcy case having no effect whatsoever on it.

The Plaintiffs' prosecution of the claim in paragraph (a) has been a waste of time for the Debtor who was forced to respond

---

11. Case No. 14–72501 (Bankr. N.D. Ga.), Unnumbered docket entry, July 13, 2015.

to it and for this Court that has had to deal with it. Part IV(C)(1) explains the Court's ruling on this issue in more detail.

Paragraph (b) states a claim for denial of the discharge under 11 U.S.C. § 727(a). Although the prayer for relief does not refer to any specific paragraph of § 727(a), the body of the complaint refers to §§ 726(a)(4)(A) (in ¶ 57), 726(a)(4)(B) (in ¶ 58), and 726(a)(6)(A) (in SI 56) [12] as the provisions on which they rely. These provisions refer variously to a knowing and fraudulent false oath or account by a debtor, a debtor's presenting or using a false claim, and the refusal of a debtor to obey any lawful order of the court in a bankruptcy case.

The Plaintiffs rely on nothing more than the Debtor's statements, set forth in full above, with regard to her interest in the Property and the District Court Litigation and her alleged failure to obey an order, not of this Court, but of the District Court. In the many pleadings and briefs they have filed in this case, they have failed to present any serious factual or legal argument beyond the conclusory allegations in their complaint to support denial of the Debtor's discharge for any reason. Nevertheless, they have not dismissed these claims.

Nothing at all is wrong with the Debtor's descriptions. They clearly and accurately set forth her understanding of the District Court's rulings and in any event specifically provide a reference to the pending litigation. They are not false, much less fraudulent.

The Debtor has not failed to obey a lawful order of this Court because the Court has not commanded her to do anything. And the Court sees no evidence that she has failed to obey an order of the District Court. That would not matter anyway—§ 727(a)(6) denies a discharge for failure of a debtor to obey an order *in the case,* meaning her Chapter 7 case. Section 727(a)(6) does not address a debtor's failure to obey an order of another court in litigation arising prior to the filing of the bankruptcy petition.

Plaintiffs have not demonstrated even a colorable basis for denial of the Debtor's discharge. Parts IV(C)(2), (3), and (4) explain this conclusion in detail.

Paragraph (c) seeks conversion to Chapter 11 or Chapter 13 if the Court finds that the "sole purpose of Defendant's bankruptcy filing was to defeat the action brought by Plaintiffs' [sic] to recover the Sewickley property from Defendant." As an initial matter, a party other than the Debtor has no right to seek conversion of a Chapter 7 case to Chapter 13.[13] And the Court cannot imagine how conversion to Chapter 11—putting the Debtor in charge of administering the subject property rather than the trustee—could have possibly helped the Plaintiffs if their objective was to prevent the bankruptcy case from interfering with their prosecution of the District Court Litigation.

Plaintiffs have not pursued this claim in later pleadings and briefing with regard to the merits of their complaint, but have not

**12.** Paragraph 56 actually cites § 727(a)(6)(A)(B). Subparagraph (B) relates to refusal to respond to a material question, other than on the ground of privilege of self-incrimination. Even broadly and liberally read, the complaint states no facts that would invoke § 727(a)(6)(B).

**13.** 11 U.S.C. § 706(a) permits a debtor to convert a case to a case under Chapter 11, 12, or 13. Section 706(b) permits other parties to seek conversion of the case only to a case under Chapter 11. The reason is that cases under Chapters 12 or 13 are voluntary, and a creditor may not commence an involuntary case under those chapters. 11 U.S.C. § 303(a).

dismissed it. In any event, nothing in the record shows any intent on the part of the Debtor to do anything in this bankruptcy case to interfere with the District Court Litigation—other than, perhaps, to extract herself from it with a discharge. Because she did not exempt her interest in the Property or any claim in the accounting in the District Court Litigation, she could have no personal interest in the outcome of the litigation as a result of the filing of this case unless the Chapter 7 trustee elected to seek to realize value from her interest and claims in the lawsuit and realized more money from it than the amount of claims in this case.

Nothing supports the claim in paragraph (c). The Court dismisses it without further elaboration or discussion.

The Plaintiffs in paragraph (d) seek a determination that the Debtor's obligations to them are excepted from discharge under § 523(a). Paragraph (d) does not identify the paragraph of § 523(a) that creates the exception to discharge that they invoke. In paragraph 59 of the complaint, however, they state that § 523(a)(4) does not discharge an individual from a debt for fraud or defalcation while acting in a fiduciary capacity.

Although the District Court entered summary judgment against the Plaintiffs on every single count of their complaint that alleged any kind of misconduct,[14] the Plaintiffs resisted discovery in this adversary proceeding on the ground that all of the facts material to their complaint had been developed in the record in the District Court Litigation. They and the Debtor agreed that the entire record in

the District Court Litigation would be incorporated into the record of this Court.[15]

Both the Magistrate Judge and the District Court Judge determined that the Plaintiffs had produced no evidence to support the liability of the Debtor to the Plaintiffs on any of the grounds they allege. The District Court imposed a constructive trust on the Property, but it is well-established that the exception from discharge for breach of fiduciary duty under § 523(a)(4) requires an express or statutory trust; the existence of a constructive trust is not sufficient.

This Court fully agrees with all of the findings and conclusions of the Magistrate Judge and the District Court Judge. Nothing in the record in the District Court Litigation or in the record before this Court shows the existence of any ground for an exception from discharge of any claim that the Plaintiffs have. Indeed, nothing in the record shows that they even have a viable claim against the Debtor for anything other than the imposition of a constructive trust on the Property and possibly for amounts due under the accounting that the District Court ordered.

Plaintiffs have no basis in law or fact for their claim that any debt the Debtor owes them is excepted from discharge under § 523(a)(4). Part IV(C)(5) explains the Court's conclusion in detail.

For the reasons summarized above and discussed in Part IV below, therefore, the Debtor is entitled to summary judgment in her favor on all claims that the Plaintiffs have asserted in the complaint.

---

**14.** Mag. R & R [D. Ct. Doc. 37], attached as Exhibit "B" to Debtor's Memorandum in Support of Motion to Dismiss Plaintiff's Complaint [Doc. 5–1 at 54]; District Court Order [D. Ct. Doc. 43], attached as Exhibit "C" to

Debtor's Memorandum in Support of Motion to Dismiss Plaintiff's Complaint [Doc. 5–1 at 81].

**15.** See Note 1 *supra*.

## D. Pending Requests for Attorney's Fees and Sanctions and Rule 54(b) Express Direction for Entry of Final Judgment on the Merits

Remaining for the Court's determination are motions that the parties have filed for sanctions against each other. In addition, paragraphs 60–64 of the Debtor's Answer [Doc. 6] seek attorney's fees from the Plaintiffs. The Debtor alleges that the Plaintiffs "have been stubbornly litigious and have caused the Defendant unnecessary trouble and expense, and required [Debtor] to retain an attorney" and that she is entitled to attorney's fees pursuant to O.C.G.A. § 13–6–11, 28 U.S.C. § 1927, and 11 U.S.C. § 105, and "other applicable law." [16] The Court will schedule an evidentiary hearing on the sanctions motions and the request for attorney's fees in the Answer by separate order.

In the meantime, the Debtor is entitled to finality with regard to the merits of the Plaintiffs' complaint. In particular, she should suffer no further delay with regard to the entry of her discharge and a determination that any debt she owes to the Plaintiffs is not excepted from discharge under 11 U.S.C. § 523(a)(4) (or § 523(a)(2) or (a)(6), for that matter [17]). She is also entitled to know that this adversary proceeding is over and that she has no further obligation to defend it on the merits.

In view of the foregoing, the Court determines, pursuant to Fed. R. Civ. P. 54(b), *applicable under* Fed. R. Bankr. P. 7054, that no just reason for delay exists with regard to the entry of final judgment in favor of the Debtor on the merits of the Plaintiffs' complaint. Accordingly, the Court will direct the entry of final judgment in favor of the Debtor, and against the Plaintiffs, on all of their claims in the Complaint based on the grant of summary judgment in favor of the Debtor. The Court will retain jurisdiction to determine the pending sanctions motions and the request for attorney's fees in the Answer.

The Court now turns to detailed consideration of the proceedings in this adversary proceeding, the motions related to the Plaintiff's request for abstention and remand, and the motions for summary judgment.

## II. BACKGROUND OF DISPUTE AND PROCEDURAL HISTORY

### A. Transfer of the Property

On February 10, 2000, the parties' mother, Sarah Jackson, executed a warranty deed conveying real property located in Sewickley, Pennsylvania (the "Property"), to the Debtor. The deed was recorded on July 26, 2002, about a month before the mother's death on August 29, 2002.

The Plaintiffs claim that the Debtor exploited their mother's rapidly deteriorating health and used her status as the oldest child to persuade her mother and four siblings to temporarily transfer the Property to the Debtor, with the promise that the Debtor would later reconvey the Property equally among her siblings.

The Debtor claims—and the evidence discussed in Part IV(C)(5) shows—that Plaintiff Velma Jackson originated the idea to transfer the Property to the Debtor and that the Plaintiffs—both of whom are Pennsylvania attorneys—advised and con-

---

**16.** Answer ¶ 64 [Doc. 6 at 11].

**17.** A debt is not excepted from discharge under 11 U.S.C. § 523(a)(2), (4), or (6) unless a timely complaint for the determination of such an exception is filed. 11 U.S.C. § 523(c).

The Plaintiffs did not request a determination under § 523(a)(2) or (6), so any debt she owes is not subject to exception under those paragraphs, either.

vinced their mother to transfer the Property to the Debtor. According to the Debtor, the Plaintiffs advised that the transfer would avoid estate taxes and that transferring it to the Debtor would avoid the attachment of existing and potential judgment and tax liens against the other siblings for debts they owed. It is undisputed that Plaintiff Velma Jackson prepared and recorded the warranty deed transferring the Property to the Debtor.

The Debtor did not transfer the Property to her siblings after their mother's death. The Plaintiffs allege that, on numerous occasions, the Debtor misrepresented her intent to, and falsely promised that she would, transfer the Plaintiffs' share of the Property to them. The Debtor claims that she was willing to transfer the Property to the siblings but that the Plaintiffs refused to prepare the deeds.

The Plaintiffs—who have resided in the Property since 2002—allege that they made considerable improvements to the Property without contribution from the Debtor. At the same time, it appears that, after the mother's death, the Debtor paid most of the property taxes and insurance attributable to the Property.

After several years of paying the property taxes, the Debtor had difficulty making property tax payments. In 2011 or 2012, she stopped paying the property taxes altogether. On March 14, 2012, one of the local taxing entities, the Quaker Valley School District, issued a Writ of Scire Facias Sur Tax Claim and Statement, initiating Case No. GD–12–4723 in the Court of Common Pleas of Allegheny County, Pennsylvania.

## B. The District Court Litigation

On June 3, 2013, the Plaintiffs, proceeding *pro se*, filed a complaint against the Debtor in the U.S. District Court for the Western District of Pennsylvania, *Jackson v. Jackson*, Civil Action File No. 2:13–cv–00746–CB–RCM (the "District Court Litigation"). With the agreement of the parties, this Court incorporated the entire record in the District Court Litigation as part of the record in this adversary proceeding.[18] The Court refers to the docket in that lawsuit as "D. Ct. Doc."

The 173–paragraph complaint in the District Court Litigation (the "D. Ct. Complaint")[19] stated ten causes of action, all based on the Debtor's alleged actions and inactions with respect to the Property: (1) unjust enrichment; (2) "Defendant as a constructive trustee"; (3) "breach of duty to keep informed"; (4) "breach of duty of loyalty and to avoid self-dealing"; (5) "breach of duty to exercise reasonable care and prudence"; (6) promissory estoppel; (7) intentional infliction of emotional distress; (8) "fraud and conversion of property and funds of plaintiff Velma Jackson"; (9) fraud; and (10) invasion of privacy.[20]

The Plaintiffs moved for summary judgment[21] on all ten counts. On June 4, 2014, the Magistrate Judge assigned to the case issued a Report and Recommendation (the "Mag. R & R).[22] The Magistrate Judge

---

**18.** See Note 1 *supra*.

**19.** Complaint (June 3, 2013) [D. Ct. Doc. 1]. A copy of the complaint is attached as Exhibit A to Debtor's Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint [Doc. 5–1 at 16].

**20.** D. Ct. Complaint ¶¶ 105–73.

**21.** Plaintiffs' Motion for Summary Judgment in District Court Litigation (Mar. 3, 2014) [D. Ct. Doc. 25].

**22.** Report and Recommendation (June 4, 2014) [D. Ct. Doc. 37]. A copy of the Report and Recommendation is attached as Exhibit B to Debtor's Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint [Doc. 5–1 at 54].

recommended the grant of summary judgment to the Plaintiffs on their claim for imposition of a constructive trust and denied the Plaintiffs' motion for summary judgment on their nine other claims. In addition, the Magistrate Judge recommended the *sua sponte* grant of summary judgment in favor of the Debtor on the Plaintiffs' nine remaining claims. (Mag. R & R at 1–2.)

As to the award of summary judgment on the constructive trust claim, the Magistrate Judge stated (Mag. R & R at 12–13):

> The Court does, however, find that a constructive trust arose under a theory of unjust enrichment. Defendant admits in her testimony that it was her mother's wish to transfer the property equally to her children, and it was transferred to defendant before their mother's death to avoid estate taxes and also because other siblings had judgments that could have been attached to the property as liens. While it was not indicated at the time of the transfer when the property was to be transferred to all of the siblings, as plaintiffs contend, it was to be at their mother's death and no evidence disputes this. It would unjustly enrich defendant to have full title to the entire property. It must also be noted that defendant was willing to transfer the property in question at many times, and relied on plaintiffs, as attorneys, to draw up a deed transferring title equally among the siblings. Plaintiffs did not do so, and defendant did not take any steps on her own to have the property transferred. Defendant paid most, if not all of the taxes on the property for the time period, and it was not until the taxes became delinquent due to defendant's nonpayment that this lawsuit was filed. Regardless, it is clear that the property was to be transferred equally to all of the siblings and that to allow defendant to maintain

full legal title would unjustly enrich her. Therefore, a constructive trust arose by unjust enrichment.

The Magistrate Judge then concluded that laches did not prevent the imposition of the constructive trust because the Plaintiffs had continuously possessed the Property. (Mag. R & R at 15).

In discussing the laches issue, the Magistrate Judge stated the following in a footnote (Mag. R & R at 15 n. 6):

> It must be noted that there are a total of five children in the family. However, only Matthew and Velma Jackson are named plaintiffs in the suit. One of the two unnamed siblings has since passed away and is survived by one minor child. None of these unnamed parties in interest have asserted any claim in this litigation. The Court notes that any claims regarding the imposition of a constructive trust would be barred by the statute of limitations and likewise barred under the doctrine of laches, as none of the other siblings or parties in interest has been in possession of the property in question during the applicable period which would bar the application of the doctrine of laches.

The Plaintiffs later invoked this footnote to contend that they are the sole beneficiaries of the constructive trust, to the exclusion of the Debtor and the unnamed sibling and heir.

As to when the Property would ultimately be conveyed, the Magistrate Judge recommended an accounting and that "any conveyance made of the property should be made conditional upon payment of these expenditures." (Mag. R & R at 15).

The District Court Judge thereafter entered a Memorandum Order (the "District Court Order") adopting the Report and Recommendation as the ruling of the Dis-

trict Court.[23] The District Court Order also directed the parties to participate in a settlement conference with the Magistrate Judge before completing the accounting. On September 12, 2014, the Plaintiffs appealed the District Court Order to the United States Court of Appeals for the Third Circuit.[24]

While the appeal was pending in the Third Circuit, the District Court moved forward with the settlement conference and accounting. The Plaintiffs moved to vacate the Magistrate Judge's authority to preside over the accounting, arguing that the accounting was a disguised attempt to apportion liability after issues of liability had already been decided.[25] The Plaintiffs also objected to the Magistrate Judge directing the parties to file confidential statements of position, which the Plaintiffs characterized as improper *ex parte* communications.[26]

The District Court denied the motion to vacate and directed the parties to proceed with the settlement conference, scheduled for September 30, 2014, with the Magistrate Judge.[27] At the conference, a dispute arose over the number of beneficiaries under the constructive trust. The Plaintiffs contended that they were the only constructive trust beneficiaries and that the Report and Recommendation specifically excluded—in its discussion of laches in the footnote quoted above—any other sibling as a beneficiary. The Debtor and the Magistrate Judge disagreed that any sibling was excluded from the constructive trust.[28]

On November 7, 2014, the Plaintiffs filed a second motion to vacate the referral to the Magistrate Judge, alleging (among other things) that the Debtor's improper *ex parte* communications with the Magistrate Judge convinced the Magistrate Judge to change the disposition of the constructive trust.[29] The District Court Judge denied the motion on November 12, 2014, stating, "There is nothing suggesting that Magistrate Judge Mitchell acted inappropriately, and no rationale for the other relief sought in the motion." [30]

The evidentiary hearing on the accounting was scheduled for November 17, 2014. On November 13, 2014, however, the Debt-

23. Memorandum Order (Aug. 15, 2014) [D. Ct. Doc. 43]. A copy of the Memorandum Order is attached as Exhibit C to Debtor's Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint [Doc. 5–1 at 81–83]. The Memorandum Order and the Magistrate Judge's Report and Recommendation have been published as a single document. *Jackson v. Jackson*, 2014 WL 4060571 (W.D.Pa. Aug. 15, 2014).

24. Notice of Appeal (Sept. 12, 2014) [D. Ct. Doc. 45]. The Third Circuit directed the parties to address finality of the order. See Note 3 *supra*.

25. Memorandum of Law in Support of Plaintiffs' Motion to Vacate the Court's Referral to the Magistrate Judge at 2 [D. Ct. Doc. 15].

26. *Id.* at 3; *see* Notice of Hearing (Aug. 18, 2014) [D. Ct. Doc. 44] (directing the parties to submit confidential statements of position).

27. Order (Sept. 18, 2014) (D. Ct. Doc.—unnumbered, text-only docket entry).

28. Plaintiffs' Motion to Vacate Referral to Magistrate Judge, to Strike Order of October 2, 2014 Because of a Lack of Jurisdiction, the Circumstances Under Which the Order Was Entered, a Pattern of Bias Against Plaintiffs, a Failure to Comply with the Applicable Rules of Court and a Failure to Conduct an Accounting as Ordered by the Court (Nov. 7, 2014) [D. Ct. Doc. No. 56] at ¶¶ 16–21, 24–26. A copy is attached as Exhibit E to Debtor's Response and Opposition to Plaintiffs' Motion for Abstention and Remand [Doc. 18 at 44, 48–51].

29. *Id.*

30. Order (Nov. 12, 2014) [D. Ct. Doc.—unnumbered, text-only docket entry).

or filed her Chapter 7 petition for relief in this Court. Proceedings in the District Court [31] and in the Third Circuit [32] were stayed.

In the Debtor's Statement of Financial Affairs and on Schedule A, the Debtor listed a one-fifth interest in the Property pursuant to the District Court Order, a pending accounting to determine share of expenses, and the Plaintiffs' appeal.[33] Part I(B) sets out the manner in which the Debtor described her interest and the status of the litigation.

## C. This Adversary Proceeding

The Plaintiffs filed a complaint (the "Complaint") [Doc. 1] in this Court on February 13, 2015. The Plaintiffs allege that they are the only beneficiaries under the constructive trust but that, through improper *ex parte* communications in the District Court Litigation, the Debtor and her then-attorney "succeeded in influencing the Magistrate Judge to attempt to provide a more favorable outcome." (Complaint ¶ 29). The Plaintiffs allege various "ethical, jurisdictional, procedural and legal wrongdoing[s] of the magistrate-judge [sic], Defendant and her legal counsel" (*Id.* ¶ 38), including "unsuccessfully attempt[ing] to bully, cajole and intimidate Plaintiffs into foregoing the enforcement of the [District Court Order]." (*Id.* ¶ 30).

The Plaintiffs further allege that the Debtor "filed a bankruptcy petition to conceal that wrongdoing and fraudulently avoid the enforcement of the" District Court Order. (Complaint ¶ 53). According to the Plaintiffs, the Debtor in her bankruptcy disclosures "materially misrepresented the Pennsylvania litigation," "dis-

regarded the [District Court Order] and concocted her own version of the constructive trust," and "fabricat[ed] an equitable interest for herself" and the parties' other two siblings. (*Id.* ¶¶ 44, 45, 55).

The Plaintiffs claim that the Debtor filed bankruptcy and made disclosures as she did "so that [the Property] can pass through Defendant' [sic] bankruptcy estate so as ultimately to frustrate the [District Court Order] and benefit Defendant' [sic] exclusively at the expense of Plaintiffs in derogation of the [District Court Order]," and "to defeat the [District Court Order] and use the fraudulent equitable interest to pay her debts under the auspices of the bankruptcy court." (Complaint ¶ 54, 55).

The Plaintiffs seek a determination that the Debtor and the bankruptcy estate hold no beneficial interest in the Property under 11 U.S.C. § 541(d). Section 541(d) states in relevant part, "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

The Plaintiffs also object to the Debtor's discharge under 11 U.S.C. §§ 727(a)(4)(A), 727(a)(4)(B), and 727(a)(6)(A). Section 727(a)(4)(A) denies a discharge when "the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account." Section 727(a)(4)(B) denies a discharge when "the debtor knowingly and fraudulently, in or in connection with the case—presented or used a false claim." Section 727(a)(6)(A) denies a dis-

---

**31.** Adversary Proceeding Complaint ¶ 42 [Doc. 1 at 9].

**32.** Adversary Proceeding Complaint ¶ 43 [Doc. 1 at 9].

**33.** Bankruptcy Case No. 14–72501, Doc. 1 at 8, 15, 17.

charge when "the debtor has refused, in the case—to obey any lawful order of the court, other than an order to respond to a material question or to testify."

Finally, the Plaintiffs seek a determination that the Debtor's obligations to the Plaintiffs are nondischargeable under 11 U.S.C. § 523(a)(4). Section 523(a)(4) renders debts nondischargeable when those debts are "for fraud or defalcation while acting in a fiduciary capacity." Supporting this claim, the Plaintiffs rely on the allegations underlying the "issues pending in the Third Circuit Court of Appeals regarding Defendant' [sic] wrongs while acting in a fiduciary capacity." (Complaint ¶ 59).

On March 30, 2015, the Debtor filed an Answer [Doc. 6] and a Motion to Dismiss [Doc. 5] with supporting memorandum [Doc. 5-1]. In the Motion to Dismiss, the Debtor argued that the Complaint failed to meet the minimum pleading requirements under Federal Rules 8(a) and 12(b)(6), that the District Court Order specifically ruled that the parties and their siblings were all beneficiaries under the constructive trust, and that District Court Order was issue- and claim-preclusive as to the Plaintiffs' claims in this proceeding.

In the Answer, the Debtor asserted entitlement to attorney's fees, alleging that the Complaint lacked a legal basis and was filed in bad faith, and that the Plaintiffs were being stubbornly litigious. In her brief in support of her motion to dismiss, the Debtor asserted a claim for attorney's fees under various theories. [Doc. 5-1 at 11].

On April 13, 2015, the Plaintiffs filed a Reply to Defendant's Motion to Dismiss [Doc. 7] and Memorandum in Support. [Doc. 7-1]. The Reply repeats the allegations in the complaint, disputes the arguments in the Motion to Dismiss, and repeats the contention that the District Court Order specifically excluded the Debtor from the constructive trust.

On June 25, 2015, the Plaintiffs filed a "Certification of Good Faith and Motion for Protective Order." [Doc. 10]. In this pleading, the Plaintiffs moved for a protective order against the Debtor's taking of their depositions on the ground that the Debtor sought testimony on matters not relevant to this adversary proceeding and that discovery was proscribed by the doctrine of judicial estoppel.

The Court held a hearing on July 21, 2015, on the Motion to Dismiss and on the Motion for a Protective Order. Matthew Jackson, but not Velma Jackson, attended the hearing.

At that hearing, the Court explained that, because the Debtor relied on substantial documents outside of the pleadings—i.e., the record in the District Court Litigation—the Court was required to convert the Motion to Dismiss into a motion for summary judgment. The Court also offered its initial assessment that the Plaintiffs' claims exhibited a fundamental misunderstanding of bankruptcy law and that certain claims were potentially sanctionable.[34]

---

**34.** On September 28, 2015, the Plaintiffs filed a Motion for Disqualification Pursuant to 28 U.S.C. § 455, a supporting affidavit, and a supporting memorandum [Doc. 20, 21, 22]. The Plaintiffs asserted that the Court's remarks at the hearing showed bias and prejudice against the Plaintiffs. The Court entered an Order Denying Motion for Disqualification [Doc. 27] noting:

[A]ny hostility or rancor perceived by the Plaintiffs at the July 21, 2015 hearing does not serve as a basis for disqualification or recusal. As a general rule, bias sufficient to disqualify a judge must arise from "extrajudicial sources." *Hamm v. Members of the Bd. of Regents of State of Fla.,* 708 F.2d 647, 651 (11th Cir.1983). An exception to this general rule is when a judge's statements in a judicial

The Court gave the Plaintiffs 30 days to respond to the converted motion for summary judgment. The Court denied the Debtor's request for attorney's fees in the motion to dismiss because the Debtor had not complied with the "safe harbor" provisions of Fed. R. Bankr. P. 9011 by giving the Plaintiffs an opportunity to withdraw their pleadings.

As to the preclusive effect of the District Court Order, the Court at the hearing noted that the Eleventh Circuit follows the *Restatement (Second) of Judgments* (1982). *E.g., Christo v. Padgett*, 223 F.3d 1324 (11th Cir.2000). It states an exception to the general rule of finality when "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." *Restatement (Second) of Judgments* § 28 (1982). Because the Debtor's bankruptcy filing stayed the Plaintiffs' appeal, and because any bankruptcy discharge would prevent the Plaintiffs from prosecuting an appeal with regard to the Plaintiffs' claims for monetary relief against the Debtor, the Court concluded that the District Court Order could not be preclusive in this adversary proceeding because it is not final.

The Court also addressed the Plaintiffs' motion for a protective order at the hearing. In response to the Court's observation that the deposition testimony of the Plaintiffs would appear to be relevant to the issues that the Plaintiffs raised in their complaint, Mr. Jackson asserted that discovery in this proceeding was not necessary because discovery had already been conducted in the District Court Litigation.

After further colloquy, the parties agreed at the hearing that discovery was unnecessary and that the case could proceed based on record in the Pennsylvania litigation. Based on this agreement, the Court announced that it would stay discovery in this proceeding until further order and that it would dismiss the motion for a protective order, without prejudice.

On July 29, 2015, the Court entered an Order [Doc. 15] incorporating the Court's rulings at the hearing. Specifically, the Order (1) made the record in the District Court Litigation, including all evidence, part of the record in this proceeding and (2) directed the Plaintiffs to respond to the motion to dismiss, converted into a motion for summary judgment, within 30 days.

The Plaintiffs did not timely respond to the converted motion for summary judgment. Rather, on August 14, 2015, the Plaintiffs filed a Motion for Abstention and Remand (the "Abstention Motion"). [Doc. 17].

The Abstention Motion sought an order "abstaining from hearing" this adversary proceeding and "remanding [it] back to the Third Circuit Court of Appeals at No. 143910." [Doc. 17 at 1]. The Abstention Motion asserted that abstention was mandatory with regard to all matters in the adversary proceeding under 28 U.S.C. § 1334(c)(2). Alternatively, the Abstention Motion argued that discretionary abstention was appropriate under 28 U.S.C. § 1334(c)(1). "In the interest of justice and comity," the motion stated, "this Court should remand the Adversary Proceeding on equitable grounds pursuant to 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452." [Doc. 17 at 1–2]. The Plaintiffs requested

---

context "demonstrate such pervasive bias and prejudice that it constitutes bias against a party." *Id.* "Friction between the court and counsel," however, does not rise to the level of "pervasive bias." *Id.*

This Judge's candid assessment of a case for purposes of trial preparation, including the strengths and weaknesses of each side, is not a display of partiality, personal bias, or prejudice.

that the Court remand the proceeding to the Third Circuit. [Doc. 17 at 2].

The Debtor filed a Response to the Motion and requested oral argument. [Doc. 18]. The parties filed other papers related to the Abstention Motion. The Debtor filed a motion to dismiss the Abstention Motion that requested its dismissal for want of prosecution because the Plaintiffs had failed to schedule it for a hearing. [Doc. 25]. In accordance with this Court's self-calendaring procedures, the Debtor's counsel scheduled a hearing on the motion to dismiss the Abstention Motion for November 17, 2015. [Doc. 25 at 4].

On September 4, 2015, the Plaintiffs filed a Cross–Motion for Summary Judgment (the "Cross–Motion"). [Doc. 19]. The Cross–Motion generally updates previous contentions and arguments to reflect summary judgment standards. The Cross–Motion also asserts that the Debtor failed to present admissible evidence and that "[t]he bankruptcy court judge did not identify any material facts that support the motion for summary judgment he essentially filed" on behalf of the Debtor. (Cross–Motion at 7).

The Cross–Motion incorporates an objection to this Court's subject matter jurisdiction and states that the Plaintiffs do not waive their arguments in the Abstention Motion.

The Debtor responded to the Cross–Motion on September 29, 2015. [Doc. 23]. The Debtor's response argues that the Debtor was obligated to disclose her interest in the Property, that issues regarding the constructive trust are irrelevant to the Debtor's discharge, that the issues regarding legal and equitable ownership of the Property are moot because the Chapter 7 trustee abandoned the estate's interest in the Property, and that the claims regarding the Debtor's wrongdoing have already been adjudicated in favor of the Debtor.

Responding to the Plaintiff's contention that the Debtor has submitted no admissible evidence, the Debtor's response notes that the record in the District Court Litigation, including all evidence, is part of the record in this proceeding. Responding to the Plaintiffs' objection to this Court's jurisdiction, the Debtor contends the objection is illogical because this Court has exclusive jurisdiction to grant the Debtor a discharge.

The Plaintiffs filed a reply opposing the Debtor's response to their Cross–Motion [Doc. 26]. The reply restates previous arguments and accuses the Debtor of violating provisions of 11 U.S.C. § 521(a)(2) because she has allegedly failed to surrender her interest in the Property in accordance with her statement of intention. This adversary proceeding is not about the Debtor's surrender of her interest in the Property, but if it were, the Court would conclude that the Debtor's actions in this case do not come close to being a violation of her obligations with regard to surrender of any interest in the Property.

On October 14, 2015, the Debtor filed a *Motion Pursuant to Bankruptcy Rule 9011* [Doc. 24] alleging that the Complaint and the Abstention Motion are frivolous, constitute harassment, and are the realization of the Plaintiffs' prepetition threats to cause the Debtor to incur unreasonable attorney fees. On November 2, 2015, the Debtor filed another Motion Pursuant to Bankruptcy Rule 9011 [Doc. 29], this one stating that the Plaintiffs' Motion for Disqualification Pursuant to 28 U.S.C. § 455 was meritless and constituted another manifestation of the Plaintiffs' threat to create unreasonable attorney fees for the Debtor. In accordance with this Court's self-calendaring procedures, counsel for the Debtor scheduled a hearing for No-

vember 17, 2015, for these two Bankruptcy Rule 9011 motions.

On November 2, 2015, the Plaintiffs filed three motions to strike.

Two of the motions to strike relate to the Abstention Motion. One [Doc. 30] requests the Court to strike the Debtor's response to the Plaintiff's Abstention Motion [Doc. 18] on the grounds that (1) the Debtor failed to serve the response on the Plaintiffs and (2) the response incorrectly referred to abstention standards under 11 U.S.C. § 305 instead of the abstention standards in 28 U.S.C. § 1334(c) that the Plaintiffs invoked.

The other motion to strike relating to the Abstention Motion [Doc. 32] requested the Court to strike the Debtor's motion to strike the Abstention Motion. [Doc. 25]. This motion also requested cancellation of the hearing the Debtor's counsel scheduled for November 17. The motion asserts that the Debtor's reliance on 11 U.S.C. § 305 was improper, that 28 U.S.C. § 1334(c) does not require a hearing, that the motion to dismiss fails to comply with the Court's local rules requiring a memorandum of law and supporting affidavits, and that the Debtor violated the Court's local rules by unilaterally setting a hearing for the Motion to Dismiss the Plaintiffs' Motion for Abstention and Remand.

The third motion [Doc. 31] requested that the Court strike the Debtor's sanctions motion filed on October 24 [Doc. 24] and cancel the hearing that the Debtor's counsel scheduled for November 17. This motion asserts that the Debtor's motion

for sanctions is frivolous; that it fails to comply with the Bankruptcy Rules and the Court's local rules requiring identification of specific conduct, a memorandum of law, and supporting affidavits; and that it includes scandalous and impertinent matter. The Plaintiffs also argue in this motion to strike that the Debtor violated the Court's local rules by unilaterally setting a hearing for the Motion.

On November 4, 2015, the Debtor filed another Motion for Summary Judgment [Doc. 33], Statement of Undisputed Facts [Doc. 34], and Brief in Support of Motion for Summary Judgment [Doc. 35]. The Debtor filed this Motion for Summary Judgment and supporting documents out of "an abundance of precaution" because the Plaintiffs contend that the converted motion for summary judgment is procedurally defective. (Def. Br. Supp. Mot. Summ. J. [Doc. 35] at 6).

On November 12, 2015, the Plaintiffs filed a Motion for Sanctions and Memorandum of Law Filed Pursuant to Rule 11 and 28 U.S.C. § 1927 and 11 U.S.C. § 707(a)(1) [Doc. 36].

The Plaintiffs did not appear at the November 17 hearing on the Debtor's two Bankruptcy Rule 9011 motions and motion to dismiss the Abstention Motion. The Court went forward with the hearing, despite the Plaintiffs' request to cancel the hearing, because several matters were ripe for a decision regardless of a hearing.[35]

At the hearing, the Court announced that it would deny the Abstention Motion for reasons stated on the record.[36] The

---

**35.** The Plaintiffs contended that the Debtor's attorney violated BLR 7007–1(f) by scheduling the hearing. That local rule states, "Motions will be decided by the Bankruptcy Court without a hearing, unless a hearing is ordered by the Bankruptcy Court." The Plaintiffs appear to be unaware of the Court's procedures that authorize parties to self-schedule hearing

dates for most matters, available on its website at http://www.ganb.uscourts.gov/sites/default/files/pwb_ocpv1.pdf.

**36.** The Abstention Motion was not scheduled for the hearing. The matter was, however, ripe for a decision, and as the Plaintiffs themselves correctly noted in their Motion to

Court sets forth the reasons for denying it in Part III below.

As the Court also announced at the hearing, denial of the Abstention Motion renders moot the Debtor's Motion to Dismiss the Motion for Abstention and Remand [Doc. 24], the Plaintiffs' Motion to Strike Response to Motion for Abstention and Remand [Doc. 30], and the Plaintiffs' Motion to Strike Debtor's Motion to Dismiss the Motion for Abstention and Remand. [Doc. 32]. Thus, the Court announced that it would dismiss all of these motions.

Although the Debtor's motion for summary judgment, as converted from her motion to dismiss pursuant to the Court's ruling at the hearing on July 21, 2015 and the Court's Order entered on July 29, 2015 [Doc. 15] was ripe for decision at the November 17 hearing, the Debtor's second motion for summary judgment filed on November 4, 2015 [Doc. 33] was not because the time for the Plaintiffs to respond to it had not expired. Accordingly, the Court announced that it would defer ruling on the motions for summary judgment so that the Plaintiffs would have the opportunity to respond to the second motion for summary judgment.

The Court also stated that it would set a separate hearing on the Debtor's two Bankruptcy Rule 9011 motions [Doc. 24 and 29], the Plaintiffs' Motion to Strike Defendant's Rule 11 Motion [30], and the Plaintiffs' Motion for Sanctions and Memorandum of Law Filed Pursuant to Rule 11 and 28 U.S.C. § 1927 and 11 U.S.C. § 707(a)(1) [Doc. 34].

## III. THE ABSTENTION MOTION

In the Abstention Motion, the Plaintiffs contend that abstention is mandatory un-

der 28 U.S.C. § 1334(c)(2) and that discretionary abstention under 28 U.S.C. § 1334(c)(1) is appropriate. The Plaintiffs request that this Court "remand the adversary proceeding back to the Third Circuit Court of Appeals at No. 143910 where the issues in this Georgia adversary proceeding are pending." (Abstention Motion at 2).

■ Section 1334(c)(2) requires abstention upon timely motion "in a proceeding based upon a State law claim or State law cause of action" over which a federal court has jurisdiction solely under 28 U.S.C. § 1334(a). In other words, abstention is mandatory under § 1334(c)(2) if the state law claim is in federal court only because of a bankruptcy case. Section 1334(c)(1) authorizes—but does not mandate—abstention "in the interest of justice, or in the interest of comity with State courts or respect for State law."

The arguments and relief requested in the Abstention Motion have no basis in law or fact. Abstention is not merely inappropriate, it is impossible. The request for remand is equally misguided.

■ ■ This adversary proceeding is an original action filed in this Court, seeking relief under bankruptcy statutes for causes of action that apply only in bankruptcy cases and over which this Court has exclusive jurisdiction. Specifically, the Plaintiffs invoked this Court's jurisdiction to determine that the Debtor's interest in the Property is not property of the estate under § 541(d) of the Bankruptcy Code, that the Debtor's discharge should be denied under § 727(a) of the Bankruptcy Code, and that the alleged debt of the Debtor to

---

Strike Defendant's Motion to Dismiss the Plaintiffs' Motion for Abstention and Remand, at 1, the relevant abstention statute, 28 U.S.C.

§ 1334, "does not require Plaintiffs to schedule a hearing."

the Plaintiffs is excepted from discharge under § 523(a)(4) of the Bankruptcy Code.

Mandatory abstention expressly applies only to "a State law claim or State law cause of action" that would not be in federal court absent a bankruptcy case. 11 U.S.C. § 1334(c)(2). This adversary proceeding is based entirely on the bankruptcy statutes just noted. It involves issues that are at the heart of bankruptcy jurisdiction—property of the estate, discharge, and dischargeability.

▊ This Court has exclusive jurisdiction over the Debtor's Chapter 7 bankruptcy case under 28 U.S.C. § 1334(a) (granting the district court, and by reference the bankruptcy court, "original and exclusive jurisdiction of all cases under title 11"). Thus, this Court has exclusive jurisdiction to determine whether to deny the Debtor a discharge under 11 U.S.C. § 727(a). Moreover, objections to discharge are statutorily core proceedings under 28 U.S.C. § 157(b)(2)(J).

▊ Likewise, determinations of nondischargeability under 11 U.S.C. § 523(a)(4) are statutorily core proceedings. 28 U.S.C. § 157(b)(2)(I) ("Core proceedings include ... determinations as to the dischargeability of particular debts...."). Under § 523(c), only a bankruptcy court may make a determination of nondis-

chargeability under § 523(a)(4). *See Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir.1991) ("The bankruptcy court has exclusive jurisdiction to determine dischargeability of these debts."); *Ga. Lottery Corp. v. Kunkle (In re Kunkle)*, 462 B.R. 914, 922 (Bankr.N.D.Ga. 2011).

▊ Moreover, district courts (and by reference bankruptcy courts) have exclusive jurisdiction over property of the estate and of the debtor. 28 U.S.C. § 1334(e)(1). Proceedings to determine property of the estate are core proceedings over which district courts (and by reference bankruptcy courts) have original jurisdiction.[37]

In the Abstention Motion, the Plaintiffs state, "The requirement that the prior proceeding be based on a state law claim or cause of action is met. The Pennsylvania Plaintiffs' lawsuit pertains to real property located in Pennsylvania. All claims in the instant Georgia Adversary Proceeding are based on the Pennsylvania law cause of action." (Abstention Motion at 6).

From that starting point, the Plaintiffs conclude that this Court has mere "related to" jurisdiction over the matters in this adversary proceeding, that there is no independent basis for federal jurisdiction,

37. *E.g., Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 448, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004) ("A bankruptcy court's in rem jurisdiction permits it to 'determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question.'") (quoting 16 James Wm. Moore et al., Moore's Federal Practice § 108.70[1], p. 108–106 (3d ed. 2004)); *Brown v. Fox Broadcasting Co. (In re Cox)*, 433 B.R. 911, 920 (Bankr.N.D.Ga.2010) (Drake, J.) ("It is generally recognized that '[a] proceeding to determine what constitutes property of the estate pursuant to 11 U.S.C. § 541 is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E).'") (quoting *Ruth v. Atlas (In re Duval Cty.*

*Ranch Co.)*, 167 B.R. 848, 849 (Bankr. S.D.Tex.1994)); *In re Duval Cty. Ranch Co.*, 167 B.R. 848, 849 ("Whenever there is a dispute regarding whether property is property of the bankruptcy estate, exclusive jurisdiction is in the bankruptcy court."); *Shubert v. Murray (In re Shubert)*, 525 B.R. 536, 537 (Bankr.M.D.Ga.2015) ("Proceedings to determine property of the estate are core proceedings under 28 U.S.C. § 157(b)."); *Sticka v. Rivera (In re Rivera)*, No. BAP OR–04–1596–MORK, 2005 WL 6960197, at *8 (9th Cir. BAP Sept. 14, 2005) ("Congress has given the bankruptcy court exclusive jurisdiction to determine what is property of the estate.").

that this matter can be timely adjudicated in the Third Circuit, that this litigation involves state law issues as to which the Third Circuit "has special and everyday expertise not requiring the expertise of the Georgia bankruptcy court," that there is no bankruptcy interest to be served by keeping this matter in this Court, that the Plaintiffs have not invoked the bankruptcy court's jurisdiction, and that the Plaintiffs "have not consented to a bankruptcy judge entering a final order in this adversary proceeding." (Abstention Motion at 8–11).

In other words, the Abstention Motion is premised on the notion that this adversary proceeding is a continuation of the District Court Litigation. Part I(C) points out a simple way for the District Court Litigation to continue with regard to what appears to be the Plaintiffs' main concern—contesting the rulings of the District Court. To accomplish such an objective, they did not need to file an original complaint in this Court that invoked numerous bankruptcy statutes, requested bankruptcy-specific relief, and asserted only bankruptcy causes of action.

The argument that mandatory abstention applies to a complaint objecting to discharge and seeking a determination of the dischargeability of a debt under § 523(a)(4) demonstrates a total misunderstanding of well-established principles of fundamental bankruptcy law, jurisdiction, and procedure.

The Court acknowledges that abstention might be appropriate if the Chapter 7 Trustee had initiated a proceeding seeking this Court's determination of the parties' interests in the Property under state law. But here, the *Plaintiffs* in this proceeding are seeking abstention in a lawsuit that they themselves filed and that asserts only bankruptcy causes of action. As Part I(C) discusses, if the Plaintiffs' endgame was to continue the District Court Litigation, it is highly likely that a simple motion for relief from the automatic stay would have promptly accomplished that result.

A lawsuit by the Trustee is not pending in this Court, however, and the Plaintiffs have asserted claims that go beyond the determination of interests in property that are the subject of a lawsuit in another court. Those other claims—discharge and dischargeability—go to the heart of the relief that a Chapter 7 debtor seeks in a bankruptcy case and over which this Court has exclusive authority.

■ The Plaintiffs' request that the Court remand this matter to the Third Circuit likewise reflects a fundamental misunderstanding of federal practice and procedure. This Court cannot "remand" an original action to another court, let alone remand anything to a federal circuit court of appeals. *See* 28 U.S.C. § 1452(b) (remand applicable only to removed claims). The Court can only imagine the reaction of the Third Circuit if the Court "remanded" this lawsuit to it.

Because no basis whatsoever exists for either abstention or remand, the Court denies the Abstention Motion. [Doc. 17]. The Court dismisses, as moot, the Debtor's Motion to Dismiss the Motion for Abstention and Remand [Doc. 25], the Plaintiffs' Motion to Strike Response to Motion for Abstention and Remand [30], and the Plaintiffs' Motion to Strike Debtor's Motion to Dismiss the Motion for Abstention and Remand [Doc. 32].

## IV. SUMMARY JUDGMENT MOTIONS

Under Federal Rule of Civil Procedure 56(a), *applicable under* Fed. R. Bankr. P. 7056, a movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judg-

ment as a matter of law." When ruling on a motion for summary judgment, the Court "must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor." *Info. Sys. and Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir.2002).

The Court here considers the merits of the three claims that the Plaintiffs assert in their complaint: that property of the Debtor's estate does not include any interest of the Debtor in the Property; that the Debtor should be denied a discharge; and that debts the Debtor owes them are excepted from discharge under 11 U.S.C. § 523(a)(4).

Analysis of the Plaintiffs' claims begins with an explanation of basic bankruptcy principles, a review of the proceedings in the District Court, and a discussion of the status of the dispute at the time of the bankruptcy filing. The Court then sets out in detail the contentions that the Plaintiffs make in their complaint in this adversary proceeding. The Court concludes with an explanation of why, on the basis of the undisputed material facts, the Debtor is entitled to judgment against the Plaintiffs on all of the claims in the complaint.

## A. Basic Bankruptcy Principles, the District Court Litigation, and the Status of the Parties' Dispute on the Petition Date

### 1. Basic Bankruptcy Principles

■ Under 11 U.S.C. § 541(a)(1), property of the estate in a bankruptcy case includes "all legal or equitable interests of the debtor in property as of the commencement of the case." When a debtor holds legal title in property but not the equitable interest, however, § 541(d) provides that the property becomes property of the estate "only to the extent of the debtor's legal title to such property, but

not to the extent of any equitable interest in such property that the debtor does not hold." In general, nonbankruptcy law governs the determination of what legal or equitable interests a debtor holds in property *Traveler's Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) (citing *Butner v. U.S.*, 440 U.S. 48, 54, 55, 57, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

■ The Debtor is the holder of legal title to the Property, but the District Court in the District Court Litigation imposed a constructive trust on the Property. The beneficiaries of that constructive trust—whoever they are—hold all of the equitable interests in the Property. To the extent that the Debtor is one of the beneficiaries of the constructive trust, her equitable interest is property of her estate.

In other words, the Debtor has an equitable interest in the Property if she is a beneficiary of the constructive trust, and she has no equitable interest if she is not. And if she is a beneficiary of the constructive trust, the equitable interest she holds as a beneficiary is property of the estate in her bankruptcy case; if she is not a beneficiary, then property of her estate does not include any equitable interest in the Property.

A Chapter 7 trustee is the representative of the estate, 11 U.S.C. § 323(a), with capacity to sue and be sued. 11 U.S.C. § 323(b). A primary duty of a Chapter 7 trustee is to "collect and reduce to money the property of the estate." 11 U.S.C. § 704(a)(1). If the Chapter 7 trustee liquidates property that the Debtor has exempted, the trustee disburses money to the Debtor to the extent of her exemption. When all property of the estate has been liquidated or abandoned and the case has otherwise been administered, the Chapter 7 trustee distributes the estate's money to

pay administrative expenses and to creditors in accordance with their priorities. 11 U.S.C. § 726.

 Under these principles, as the representative of the estate and the person responsible for liquidating property of the estate, a Chapter 7 trustee is a necessary party to any proceeding that involves a determination of whether an interest in property is or is not property of the estate. A Chapter 7 debtor who has claimed an exemption in the property under 11 U.S.C. § 522 might be a proper party to such a proceeding, but a debtor who has not claimed an exemption ordinarily has no interest in it. The Debtor in this Chapter 7 case claimed no exemption in the Property.

### 2. Rulings in the District Court Litigation

The Court now turns to the District Court Litigation. On June 4, 2014, the Magistrate Judge submitted a Report and Recommendation that recommended the partial grant of the Plaintiffs' motion for summary judgment on their request for the imposition of a constructive trust on the Property. As to when the Property would be conveyed, the Magistrate Judge recommended an accounting and stated, "any conveyance of the property should be made conditional upon payment of these expenditures." (Mag. R & R at 15). The Court considers below the question of whether, as the Plaintiffs contend, the Magistrate Judge excluded the Plaintiff and other siblings as beneficiaries of the constructive trust.

The Magistrate Judge otherwise denied the Plaintiffs' motion for summary judgment and recommended the *sua sponte* grant of summary judgment in the Debtor's favor on all other counts of the complaint. The District Court rejected the Plaintiffs' objections and adopted the Report and Recommendation in a Memorandum Order entered on August 15, 2014 (the "District Court Order"). Plaintiffs appealed to the Third Circuit.

After further proceedings in the District Court Litigation that this Order addresses elsewhere, an evidentiary hearing was scheduled for November 17, 2015. The Debtor filed her Chapter 7 case and moved to stay the proceedings in both the District Court and the Third Circuit on November 13, 2014. Both courts stayed the proceedings before them, and the evidentiary hearing was cancelled.

### 3. Status of the Parties' Dispute on the Petition Date

When the Debtor filed her Chapter 7 petition, the District Court had imposed a constructive trust on the Property and had referred the proceeding to the Magistrate Judge to conduct an evidentiary hearing on the accounting that the District Court Order called for. Conveyance of the Property was conditioned on payment of expenditures determined after the accounting. The Debtor did not claim an exemption of any interest she has in the Property, so the only party with the authority to attempt to liquidate the Debtor's interest in the Property, if any, or to contest the imposition of a constructive trust at all was the Chapter 7 trustee.

The Chapter 7 Trustee filed a Report of No Distribution on July 13, 2015, thus indicating that the Trustee had no intent to liquidate any interest in the Property that the Debtor might have. A review of the docket in the Debtor's case shows that, in the absence of this adversary proceeding, this case would have been closed shortly after the expiration of the time for the filing of objections to discharge, February 13, 2015—the very date on which the Plaintiffs initiated this adversary proceeding.

Upon the closing of the case, any interest in the Debtor would be abandoned, 11 U.S.C. § 554(c), and would no longer be property of the estate. Further, closing of the case and discharge of the Debtor would result in termination of the automatic stay, 11 U.S.C. § 362(c)(1), (2). The discharge injunction of 11 U.S.C. § 524(a) would prevent continuation of the District Court Litigation to the extent that the Plaintiffs sought to recover against the Debtor as a personal liability of the Debtor, but it would not stop continued prosecution of *in rem* relief against the Property and her interest in it.

## B. The Plaintiffs' Complaint

Rather than seeking relief from the automatic stay of 11 U.S.C. § 362(a) to permit the District Court Litigation to proceed, the Plaintiffs chose to file a complaint against the Debtor, but not the Chapter 7 Trustee.

The Plaintiffs' complaint rests heavily on two propositions. The first is that the District Court Order is a final determination of the rights of the Plaintiffs and the Debtor. The second is that the District Court Order excludes the Debtor (and one other sibling and the heir of another) as beneficiaries of the constructive trust it imposed such that the Plaintiffs are the only persons with an equitable interest in the Property. (Complaint ¶¶ 11, 27, 48; Cross–Motion at 6). They also conclude that, under Rule 70(b) of the Federal Rules of Civil Procedure, the District Court Order vests title to the Property in the Plaintiffs "as if it had been a legally executed conveyance." (Complaint ¶¶ 27–28).

As discussed below, both propositions and their conclusion are wrong. But even if they are right on these points, the Plaintiffs are not entitled to any relief against the Debtor.

The explanation of why this is so begins with a review of the allegations of the Plaintiffs' complaint with regard to the proceedings in the District Court Litigation and the other allegations that the Plaintiffs make. The Court returns to its analysis of the merits in Part IV(C).

Although the Plaintiffs contend that the District Court Order finally and conclusively established themselves as the only beneficiaries of the constructive trust and vested title to the Property in them, the complaint contains allegations that complain of misconduct in the litigation on the part of the Debtor, her attorney, and the Magistrate Judge. For example, the Plaintiffs state that: (1) during a settlement conference after entry of the District Court Order and before the scheduling of the hearing on the accounting, "the magistrate judge, the [Debtor], and her legal counsel unsuccessfully attempted to bully, cajole, and intimidate Plaintiffs into foregoing enforcement of the [District Court Order] and dropping the appeal to the Third Circuit Court of Appeals" (Complaint ¶ 30); (2) the Magistrate Judge "abused his office, by issuing an unlawful order to change the [District Court Order]" (Complaint ¶ 33); and that the Plaintiffs and the Magistrate Judge engaged in improper ex parte communications. (Complaint ¶ 37).

The Plaintiffs state that they filed a motion on November 7, 2014, to vacate the referral of the accounting issues to the Magistrate Judge that "set forth in detail the ethical, jurisdictional, procedural, and legal wrongdoing of the magistrate-judge [sic], [Debtor] and her legal counsel," (Complaint 38–39). The District Court summarily denied it. (Complaint ¶ 39).

The Plaintiffs then note that the Debtor filed her Chapter 7 case on November 13, 2015, and filed motions for a stay in the

District Court and in the Third Circuit that same day. (Complaint ¶¶ 40, 41). Both courts stayed the pending cases, and the District cancelled the evidentiary hearing on the accounting scheduled for November 17. (Complaint ¶¶ 41–43).

With regard to the Debtor's bankruptcy case, the Plaintiffs allege that the Debtor "materially misrepresented" the District Court Litigation in her bankruptcy filing and "omitted information in order to take advantage of the bankruptcy system and avoid compliance with the [District Court Order] imposing a constructive trust upon the [Property.]" (Complaint ¶ 44). Continuing, they add that the Debtor in her bankruptcy filing "disregarded the [District Court Order and concocted her own version of the constructive trust. In her fabricated constructive trust, Defendant names herself, [the two other siblings] and Plaintiffs as the beneficial owners, falsely implying that this was the determination of the [District Court]." (Complaint ¶ 45).

After making these allegations, the complaint states the two propositions mentioned above: "The [District Court Order] imposing a constructive trust upon the [Property] preceded [Debtor's] bankruptcy petition by three months. It is a final order since [Debtor] did not challenge the order or preserve her right to challenge the order on appeal." (Complaint ¶ 48). They then conclude that, because the District Court Order determined the scope of the beneficial interest of the Debtor, that beneficial interest "is excluded from the bankruptcy estate by operation of [11 U.S.C. § 541(d).]" [Complaint ¶ 50; see also ¶ 52].

The Court assumes that these allegations form the basis for paragraph (a) of the complaint's prayer for relief, which requests "that the Court find that Defendant holds no equitable interest in the [Property] and that all of the equitable interests in the Property . . . are excluded from the bankruptcy estate" under [11 U.S.C. § 541(d) ]."

The complaint then returns to the Debtor's allegedly wrongful conduct in the District Court Litigation. The complaint alleges, "After engaging in misconduct in attempting to defeat the [District Court Order] in collusion with the magistrate judge, Defendant filed a bankruptcy petition in order to conceal that wrongdoing and fraudulently avoid the enforcement of the [District Court Order.]." (Complaint ¶ 53).

In the bankruptcy petition, the Plaintiffs allege, "[Debtor] made false statements so that the [Property] can pass through [Debtor's] bankruptcy estate so as ultimately to frustrate the [District Court Order] and benefit [Debtor] exclusively at the expense of Plaintiffs in derogation of the [District Court Order." (Complaint ¶ 54). According to the Plaintiffs, the Debtor "fabricated an equitable interest for herself in the [Property] to defeat the [District Court Order] and use the fraudulent equitable interest to pay her debts under the auspices of the bankruptcy court." (Complaint ¶ 55).

The Plaintiffs then assert grounds for denial of the Debtor's discharge under 11 U.S.C. § 727(a) and for excepting the debts they contend the Debtor owes them from discharge under 11 U.S.C. § 523(a)(4). The prayer for relief requests denial of the Debtor's discharge and a determination that her alleged debts to them are excepted from discharge under § 523(a)(4) in paragraphs (b) and (d).[38]

---

**38.** In paragraph (c) of the prayer for relief, the Plaintiffs request conversion of the case to Chapter 11 or Chapter 13. The Court explained why the Plaintiffs are not entitled to this relief in Part I.

The Plaintiffs contend that the Debtor's failure to comply with the District Court Order requires denial of discharge under § 727(a)(6)(A), that the Debtor's misrepresentation of facts in her bankruptcy petition constitutes a false oath or account that requires denial of her discharge under § 727(a)(4)(A), and that her knowing and fraudulent presentment or use of a false claim in connection with the bankruptcy case requires denial of discharge under § 727(a)(4)(B). (Complaint ¶¶ 56–58).

The body of the complaint ends with the allegation that the Debtor "omitted the fact that there are issues pending in the [Third Circuit] regarding [Debtor's] wrongs while acting in a fiduciary capacity and states that her debts to them are excepted from discharge under § 523(a)(4).

## C. Determination of the Motions for Summary Judgment

The Plaintiffs assert three claims. First, they seek a determination that the Debtor has no equitable interest in the Property and that all of the equitable interests in the Property are excluded from the bankruptcy estate under 11 U.S.C. § 541(d). Second, they assert that the Court should deny the Debtor's Chapter 7 discharge. Finally, they contend that debts the Debtor owes to them are excepted from discharge under § 523(a)(4). For reasons set forth below, the Defendant is entitled to summary judgment on all claims.

### 1. Determination of Interests in the Property

■ The Plaintiffs seek a determination that the Debtor and estate have no interest in the Property under 11 U.S.C. § 541(d). Section 541(d) states, in relevant part, "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable inter-

est … becomes property of the estate … only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." The Plaintiffs also assert that, under Federal Rule of Civil Procedure 70(b), the District Court Order in itself constituted a conveyance of the Property to the Plaintiffs, divesting the Debtor of any legal interest in the Property. (Complaint ¶ 27; Cross–Motion at 4–6).

As the Court noted at the hearing held on July 21, 2015, the Plaintiffs' allegations regarding this claim exhibit a fundamental misunderstanding of bankruptcy law. The Plaintiffs have filed nothing since that hearing to convince the Court that its initial assessment was wrong. For several reasons, the Plaintiffs are not entitled to any relief under § 541(d).

First and foremost, the Plaintiffs have not named the Chapter 7 Trustee as a party in this adversary proceeding and the dispute with the Debtor is not ripe for determination in this Court.

The Court cannot make a determination that any property is not property of the estate under § 541(d) in a proceeding in which the real party in interest, the Trustee as the representative of the estate, is not a party.

■ The Debtor is a party, but she currently has no interest in the Property. As the Eleventh Circuit stated in *Parker v. Wendy's International, Inc.*, 365 F.3d 1268, 1272 (11th Cir.2004), "Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to § 554 of the Bankruptcy Code." Because the Debtor has not claimed an exemption for any interest she may have in the Property, the Trustee is currently the only adverse party

in the Debtor's bankruptcy case with an interest in the Property.

It is likely that any interest of the Debtor in the Property will be abandoned to her under § 554(c), but it is not possible for her to ever have an interest in the Property for purposes of her bankruptcy case.

The Trustee's Report of No Distribution indicates that the Trustee does not intend to seek to liquidate any interest of the Debtor in the Property. Unless the Trustee withdraws this Report, any interest of the Debtor will be abandoned to her under 11 U.S.C. § 554(c). But if abandonment happens, the Property and any interest of the Debtor in it are not part of this bankruptcy case. Arguably, it is conceivable that a debtor who has claimed an exemption in abandoned property could take action in a bankruptcy case to establish or protect her exemption in the property, but the Court need not address that theoretical issue here because the Debtor has not claimed any exemption of her interest.

■ By operation of law, therefore, abandonment will remove the Debtor's interest, if any, in the Property from the bankruptcy case and will eliminate any need for this Court to resolve any dispute about that interest.

■ Federal court jurisdiction is limited "to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Digital Properties, Inc. v. City of Plantation,* 121 F.3d 586, 589 (11th Cir.1997).[39] The only dispute in this bankruptcy case about the Debtor's interest in the Property has been manufactured by the Plaintiffs without any reason that the determination would make any difference in the case. The Court might have to address the merits of the issue in the context of a proceeding seeking some type of relief in the case, such as a motion for relief from the automatic stay of § 362(a) to permit the District Court Litigation to proceed, a motion to compel abandonment of any interest of the estate in the Property under § 544(b), or a proceeding brought by the Trustee to establish the estate's rights in the Property. No one has filed anything that requires the Court to determine the issue.

■ Section 541 defines estate property, but it does not create a cause of action to determine what is and is not estate property. *See, e.g., Stokes v. Duncan (In re Stokes),* 2013 WL 5313412, at *6 (9th Cir. BAP Sept. 23, 2013) ("Section 541 defines property of the estate, but does not create a right to relief. It, therefore, follows that an action to enforce a right thereunder cannot exist.") (citing *Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard),* 729 F.3d 1279, 1286–87 (9th Cir.2013)). The issue of the parties' rights in the Property is not ripe until the Court has a reason to rule on it. Because administration of this case currently does not require determination of the issue and because it appears that it will never be necessary for the Court to do so, the Plaintiffs are not entitled to relief on this claim.

Perhaps the Plaintiffs think that it is important for the Court to address what they insist are the Debtor's intentionally false and fraudulent statements in her SOFA and Schedules with regard to her interest in the Property. The Debtor's

---

**39.** "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes. 'The doctrine seeks to avoid entangling courts in the hazards of premature adjudication.' " *Digital Props., Inc.,* 121 F.3d at 589 (quoting *Felmeister v. Office of Attorney Ethics,* 856 F.2d 529, 535 (3d Cir.1988)).

statements are material to the Plaintiffs' grounds for denial of the Debtor's discharge, and the Court addresses those claims below.

■■■■■ But those statements have nothing to do with whether the Debtor does or does not have an interest in the Property. A fundamental bankruptcy principle is that a debtor's statements in her SOFA and Schedules with regard to an asset she thinks she owns and descriptions of what she thinks her interest is cannot change substantive rights. Upon a bankruptcy filing, the estate acquires all of the Debtor's *existing* legal and equitable interests—"there is no suggestion in the text of the Bankruptcy Code that the trustee acquires rights and interests *greater* than those of the debtor." *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1150 (11th Cir. 2006).

So for purposes of a judicial determination of the Debtor's interest in an asset, whether in this or any other court, the Debtor's statements simply do not matter. To the extent that the Plaintiffs want this Court to "correct" the Debtor's statements—even if the Plaintiffs are right that the statements are inaccurate—they have no right to such relief.

■■■■ Alternatively, the undisputed material facts in this case do not establish that the Plaintiffs are entitled to a determination that the Debtor does not have an interest in the Property as the beneficiary of a constructive trust.

As mentioned above, the Plaintiffs' contention that the Debtor has no equitable interest in the Property relies on the propositions that the District Court Order is a final order and that it excluded the Debtor as a beneficiary.

The proposition that the District Court Order is final is wrong for at least two reasons. First, the record in the District Court Litigation does not reflect the entry of a final judgment on a separate document as Rule 58(a) of the Federal Rules of Civil Procedure requires. Second, the District Court Order itself expressly conditions final relief (*i.e.*, conveyance of the Property to the beneficiaries of the constructive trust) upon the accounting and the payment of expenditures in accordance with that accounting. (Mag. R & R at 15).

The proposition that the District Court Order excluded the Debtor (and others) as beneficiaries is likewise wrong. Nothing in the District Court Order expressly states that the Debtor is not, or cannot be, a beneficiary of the constructive trust. The reading of the Report and Recommendation that the District Court Order adopted that is most favorable to the Plaintiffs is that it is silent on the issue. More probably, at least the Magistrate Judge thought that the District Court Order did not exclude the Debtor as a beneficiary, as indicated by the Plaintiffs' November 7, 2014 motion to vacate the referral to the Magistrate Judge.[40]

The Plaintiffs also conclude that the District Court Order divested any interest of the Debtor in the Property and effected a conveyance of the Property to them as a matter of law under Rule 70 of the Federal

---

40. Plaintiffs' Motion to Vacate Referral to Magistrate Judge, to Strike Order of October 2, 2014 Because of a Lack of Jurisdiction, the Circumstances Under Which the Order Was Entered, a Pattern of Bias Against Plaintiffs, a Failure to Comply with the Applicable Rules of Court and a Failure to Conduct an Accounting as Ordered by the Court (Nov. 7, 2014) [D. Ct. Doc. No. 56] at ¶¶ 16–21, 24–26. A copy is attached as Exhibit E to Debtor's Response and Opposition to Plaintiffs' Motion for Abstention and Remand [Doc. 18 at 44, 48–51].

Rules of Civil Procedure. This contention is frivolous and has no basis in law or fact.

The District Court Order did no such thing. To the contrary, it provided for an accounting with regard to the parties' expenditures on the Property and stated that "any conveyance of the property should be made conditional upon payment of these expenditures." (Mag. R & R at 15).

Rule 70(a) provides a remedy if a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to do so. The remedy is the appointment of another person to perform the required act.

Rule 70(b) provides that, instead of ordering a conveyance, a district court *may* enter a judgment divesting any party's title to real property within the district and vesting it in others. Such a judgment "has the effect of a legally executed conveyance."

Rule 70 has no possible application in this adversary proceeding. The Plaintiffs' assertion to the contrary is frivolous.

The Plaintiffs want this Court to determine that the Debtor does not have an equitable interest in the Property and that it is not property of the estate based solely on the District Court Order. The Court concludes that the District Court Order does not do that, and no other evidence in the record provides a basis for the Court to make such a determination.

Having determined that the District Court Order does not exclude the Debtor as a beneficiary, it is not necessary for the Court to go further and determine whether the Debtor does have an equitable interest. The Plaintiffs have not requested that this Court determine that issue adversely to them and the Trustee is the only party in the bankruptcy case who could properly do so for purposes of the debtor's

bankruptcy case in view of the fact that the Debtor has not claimed any interest as exempt.

The Court notes, however, that a fair reading of the District Court Order (*i.e.*, a reading that is not most favorable to the Plaintiffs) could indicate that the District Court Order did not exclude the Debtor— or the other siblings—as beneficiaries of the constructive trust it imposed.

The District Court Order imposed a constructive trust based on the intent of the parties' mother that all of her children share the Property.

A footnote in the Report and Recommendation (quoted in Part II(B)) states that laches would bar the claims of siblings not in continuous possession of the Property (i.e., everyone but the Plaintiffs). (Mag. R & R at 15 n.6). The Plaintiffs rely solely on that footnote for their contention that the Debtor and other siblings are excluded from the constructive trust.

It is arguable that the footnote contains only a supplemental observation with regard to the laches issue and that it was not intended to state a dispositive ruling that determined the beneficiaries of the constructive trust.

It is also arguable that the footnote excludes the parties' other siblings from the constructive trust based on laches. But it would seem that laches logically cannot apply to the Debtor. The Debtor cannot be the plaintiff in an action against herself for imposition of a constructive trust over property she already owns. The Court would doubt that laches or any other legal or equitable principle would bar the Debtor, as the holder of legal title to the Property, from having a claim as a beneficiary.

A conclusion that the Plaintiffs are the sole beneficiaries of the constructive trust seems to contradict what appears to be the primary holding of the District Court Or-

der. In the text of the Report and Recommendation, the Magistrate Judge states, "[I]t is clear that the property was to be transferred equally to all of the siblings and that to allow [the Debtor] to maintain *full* legal title would unjustly enrich her. Therefore, a constructive trust arose by unjust enrichment." (Mag. R. & R at 13).

The relief that this language implies—the imposition of a constructive trust in favor of all of the siblings in accordance with their mother's intent—is precisely the relief that the Plaintiffs sought in the District Court Complaint. That complaint did not request or even envision a constructive trust with themselves as the only beneficiaries. Instead, it specifically alleges that the Debtor held the Property in trust for "the intended beneficiaries" (i.e., all five siblings) and requests an order directing the Debtor to transfer legal title to the Plaintiffs' and the parties' other two siblings.[41]

The Plaintiffs' characterize the Magistrate Judge's language merely as a discussion of "the intention of Sarah Jackson when she entrusted Defendant with her property," (Pls.' Mem. Supp. Reply to Def.'s Mot. Dismiss [Doc. 7–1] at 9), but it is more likely that the ruling tracks the language that the Plaintiffs used to describe what they wanted.

This Court should not and will not undertake the task of interpreting this or any other language of the Report and Recommendation and of the District Court Order to make a determination of their meaning and effect with regard to whether the Debtor is a beneficiary of the constructive trust. It is neither necessary nor appropriate for this Court to do so for at least three reasons.

First, the Plaintiffs asked the Court to determine that the Debtor does not have an interest in the Property but did not request that the Court determine that she does. Second, as discussed earlier, resolution of the issue will not affect administration of the Debtor's bankruptcy case in any way. Third, and more important, final resolution of the dispute should take place in the District Court where substantial proceedings have taken place and are nearing completion.

For purposes of this adversary proceeding, it is sufficient for the Court to determine that it is impossible for the Court to conclude, as the Plaintiffs repeatedly insist, that the District Court Order is a final order that divests the Debtor of any interest in the Property

Because the Plaintiffs have produced no evidence that the Debtor has no interest in the Property as the beneficiary of the constructive trust, the Plaintiffs are not entitled to a determination that § 541(d) excludes any interest that the Debtor may have from property of her bankruptcy estate.

For the forgoing reasons, the Plaintiffs are not entitled to any relief from this Court under § 541(d). The Debtor is entitled to summary judgment on this claim.

### 2. Claim for Denial of Discharge Under § 727(a)(4)(A)—False Oath or Account

Under 11 U.S.C. § 727(a)(4)(A) a debtor cannot receive a discharge if "the debtor knowingly and fraudulently, or in connection with the case—made a false oath or account." The Plaintiffs assert that the Debtor made a false oath in her schedules and Statement of Financial Affairs by stating that the District Court Order included

**41.** D. Ct. Complaint at 25 [¶ 116], 33 [¶ b] ) (attached as Exhibit A to Debtor's Memorandum in Support of Motion to Dismiss Plaintiff's Complaint [Doc. 5–1 at 40, 48] ).

her as a beneficiary of the constructive trust. The Plaintiffs contend that the statement is false because the District Court Order imposed a constructive trust in favor of the Plaintiffs alone and expressly excluded the Debtor and the parties' other siblings. (Complaint ¶¶ 11, 12; Cross–Motion at 6, 10–12).

 Because a debtor must sign her schedules and SOFA under penalty of perjury, false statements in them can result in denial of discharge under § 727(a)(4)(A). But to justify denial of discharge under § 727(a)(4)(A), "the false oath must be fraudulent and material." *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir.1991). A false oath is material "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984).

 As discussed extensively in the preceding section, the Court cannot conclude that the District Court Order divested the Debtor of her interest as a beneficiary of the constructive trust. But even if the Court agreed with the Plaintiffs' interpretation of the Report and Recommendation, the Plaintiffs still lose on this claim.

The Plaintiffs have offered no legal authority, arguments, or facts showing that any statements were material or that the Debtor made them fraudulently.

 The alleged false statements at issue involve disclosure of an interest that the Plaintiffs claim the Debtor does not have. Given the purposes of Chapter 7 bankruptcy, such a disclosure cannot possibly be material or be made fraudulently. Debtors are obligated to disclose assets and risk a false oath by underdisclosing assets.[42]

The Debtor claims an interest in the Property and fully disclosed that interest and the dispute with the Plaintiffs. She did so properly and in full compliance with the requirements of the Bankruptcy Code and Bankruptcy Rules. Even if the Plaintiffs are completely right on the merits in the District Court Litigation,[43] the Debtor's disclosures do not come close to being a false oath.

Nor can they possibly be material. As discussed in the previous section, a debtor's statements in her schedules and SOFA have no legal effect and do not affect the substantive rights of any party. The disclosures are for the purpose of

---

**42.** *See Smith v. Smith (In re Smith)*, 489 B.R. 875, 894, 895 (Bankr.M.D.Ga.2013) ("The debtor must schedule any property he owns or claims to own, whether or not the plaintiff agrees with the debtor's assessment of ownership. The debtor clearly thinks he owns this property. Omitting property that could possibly benefit the estate would have been a basis for a § 727(a)(4)(A) or a § 727(d)(1) claim, so debtors should err on the side of overinclusion. ... [B]arring extraordinary circumstances, this type of misrepresentation would not result in denial of discharge because it does not relate materially to the bankruptcy case. ... [T]he estate has no interest in property the debtor has no interest in, and thus the inclusion does not materially relate to the bankruptcy case. Moreover, intent to defraud

in a Chapter 7 case through claiming to own more property is difficult to fathom."); *National Income Tax Service, Inc. v. Dorsey (In re Dorsey)*, 2008 WL 7842105, at *3 (Bankr. N.D.Ga. Apr. 18, 2008) ("The Court cannot conclude that these disclosures constitute false oaths. While the disclosures, viewed very narrowly, may appear contradictory, they may be considered, alternatively, a form of cautious overdisclosure. In other words, it is better for a debtor to disclose everything, than to omit anything.").

**43.** As the Court discusses in the previous section, it is far from clear that they are right, but the Court need not and does not decide the merits of that litigation.

providing information about any asset that a debtor may possibly have so that the Chapter 7 Trustee or other parties can conduct an investigation and determine whether the estate can benefit from the pursuit and liquidation of an interest in an asset.

At best, the Plaintiffs have established nothing more than their disagreement with the statements the Debtor made. Their assertion that the Debtor should be denied a discharge on account of her statements in the Schedules and SOFA is frivolous; they have shown no basis in law or fact that comes close to supporting denial of the Debtor's discharge under § 727(a)(4). The Debtor is entitled to summary judgment on this claim.

### 3. Claim for Denial of Discharge Under § 727(a)(4)(B)—False Claim

 Under 11 U.S.C. § 727(a)(4)(B), a debtor cannot receive a discharge if "the debtor knowingly and fraudulently, or in connection with the case—presented or used a false claim."

The Complaint's sole allegation for this claim is, "Defendant also violated 11 U.S.C. Section 727(a)(4)(B) which prohibits the granting of a discharge to a defendant who knowingly and fraudulently presented or used a false claim in or in connection with a bankruptcy case." (Complaint ¶ 58). The Plaintiffs failed to elaborate on this contention in the Complaint or in any subsequent pleading.

 Section 727(a)(4)(B) encompasses bankruptcy "claims" as defined in 11 U.S.C. § 101(5) (i.e., rights to payments) rather than assertions, representations, and statements.[44]

No proofs of claim were filed in the Debtor's bankruptcy case, which is typical in no-asset Chapter 7 cases. Moreover, the Plaintiffs point to no inflated or false claim on the Debtor's schedules, let alone a claim presented with fraudulent intent.

To the extent that the Plaintiffs contend that the Debtor's false "claim" is her claim of an ownership interest in the Property, the Court notes that (1) a claim of ownership, even if false, is not a "claim" for purposes of § 727(a)(4)(B) and (2) the Plaintiffs have not shown anything to be false because, as the Court has discussed above, the Debtor fully and properly disclosed an asserted interest in the Property.

Plaintiffs claim for denial of the Debtor's discharge under § 727(a)(4)(B) is frivolous, wholly unsustainable as a matter of law. The Debtor is entitled to summary judgment on this claim.

### 4. Claim for Denial of Discharge Under § 727(a)(6)(A)—Refusal to Obey Lawful Order of the Court in the Case

 Under 11 U.S.C. § 727(a)(6)(A), a debtor cannot receive a discharge if "the debtor has refused, in the case—to obey any lawful order of the court, other than an order to respond to a material question or to testify."

---

**44.** *See, e.g., Looney v. Owens (In re Owens,* 2006 WL 6589904, at *5 (Bankr.N.D.Ga. 2006) ("A 'false claim' is not the equivalent of an assertion, representation, or statement.") (citing cases); *Parnes v. Parnes (In re Parnes),* 200 B.R. 710, 722 (Bankr.N.D.Ga.1996) ("Cases involving allegations of a false claim under § 727(a)(4)(B) generally involve the scheduling of non-existent debts, the schedul-

ing of inflated debts, or the filing by the debtor of a false proof of claim. ... [T]he word 'claim' as defined in § 101(5) of the Bankruptcy Code does not mean an 'assertion,' but means a 'right to payment' or a 'right to an equitable remedy for breach of performance if such breach gives rise to payment.'") (quoting *Garcia v. Garcia (In re Garcia),* 168 B.R. 403 (D.Ariz.1994)).

The Plaintiffs' basis for denial of discharge under § 727(a)(6)(A) is their allegation that the Debtor refused to comply with the District Court Order by improperly influencing the Magistrate Judge through *ex parte* communications to provide a better outcome with the constructive trust, by filing the Chapter 7 bankruptcy, and by the numerous misrepresentations in her bankruptcy schedules. (Complaint ¶¶ 29, 30, 33, 44, 53–56).

As an initial matter, the Court notes that it has not issued any order that the Debtor has refused to obey. Making misrepresentations in a bankruptcy case may result in denial of discharge, but not for failure to obey a court order. In any event, the Court finds not a single misrepresentation that the Debtor has made.

So the sole basis for denial of discharge under § 727(a)(6)(A) is the Debtor's alleged failure to obey the District Court Order. The Plaintiffs' claim is frivolous for several obvious reasons.

The Plaintiffs point to no language in the District Court Order ordering the Debtor to convey the Property. In fact, no such language exists. The District Court Order, through the Report and Recommendation, specifically states that no conveyance would occur until after an accounting was completed: "Because justice requires the reimbursement and/or offsetting of expenditures in connection with the property, any conveyance made of the property should be made conditional upon payment of these expenditures." (Mag. R & R at 15).

Even if the District Court Order imposed an obligation to convey, and even if the Debtor nefariously attempted to avoid its enforcement, the Plaintiffs still have no legal basis to object to her discharge for those reasons under § 727(a)(6)(A) as a matter of law.

██ Section 727(a)(6)(A), by its own terms, applies to a Debtor's refusal to obey an order "in the case" and "of the court," not "in any case" and "of any court." The Plaintiffs have provided no legal authority to support the application of § 727(a)(6)(A) to orders not issued by this Court in this case, and the Court is unaware of any such authority. In fact, bankruptcy is *intended* to stay and prevent the enforcement of various prepetition court orders.

The Plaintiffs' § 727(a)(6)(A) claim is frivolous and has no basis in law or fact. The Debtor is entitled to summary judgment on this claim.

## 5. Claim for Determination of Nondischargeability Under § 523(a)(4)— Debt for Fraud or Defalcation While Acting in a Fiduciary Capacity

██ Section 523(a)(4) renders a debt nondischargeable when it is "for fraud or defalcation while acting in a fiduciary capacity."

To support this claim, the Plaintiffs rely on the allegations underlying the "issues pending in the Third Circuit Court of Appeals regarding [the Debtor's] wrongs while acting in a fiduciary capacity." (Complaint ¶ 59). The Plaintiffs' complaint does not otherwise specify the particular claims or supporting allegations.

The Plaintiffs' fiduciary-related claims in the District Court Litigation are breach of duty to keep informed, breach of duty of loyalty and to avoid self-dealing, and breach of duty to exercise reasonable care and prudence. These claims relate to the Debtor's alleged mishandling of the Property (resulting in tax liens) and various actions and inactions in connection with

the Property.[45]

The Plaintiffs also assert two fraud claims in the District Court Litigation based generally on alleged representations that the Debtor intended to transfer to the Plaintiffs their share of the Property, thereby inducing the Plaintiffs to spend money improving the Property.[46]

 As a matter of law, the Debtor was not a "fiduciary" under § 524(a)(4) as to the Plaintiffs. The term "fiduciary" in § 523(a)(4) "is not to be construed expansively, but instead is intended to refer to 'technical' trusts." *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir.1993). In other words, for purposes of § 523(a)(4), "Constructive and ex maleficio trusts do not qualify." *Rose v. Davis (In re Davis)*, 476 B.R. 191, 195 (Bankr.W.D.Pa.2012). Because the Plaintiffs' § 524(a)(4) claim relies on alleged fiduciary obligations arising out of a constructive trust, the Debtor is entitled to summary judgment.

The parties agreed to incorporate the record in the District Court Litigation into this proceeding. The Court's review of that evidence compels, as a matter of law, the same conclusions that the District Court made: the Debtor committed no fraud and breached no fiduciary duty.

The picture painted by Plaintiffs' allegations bears no resemblance to the actual facts. According to the Plaintiffs, the Debtor exploited her status as oldest daughter to gain the confidence of, and ultimately impose her will on, a susceptible and terminally ill Sarah Jackson, eventually convincing Sarah Jackson to convey the Property to the Debtor. But as the Report and Recommendation found, "There is no evidence of record that [the Debtor], who at the time in question lived in Georgia, exuded any 'overmastering dominance' or that their mother was dependent upon [the Debtor] or had some sort of justifiable trust in her daughter's experience with estate and property law." (Mag. R & R at 12). In fact, as the Magistrate Judge found, "It is clear that it was plaintiff Velma Jackson, an estate attorney living close to her mother in Pennsylvania at the time of the conveyance, who convinced her mother to transfer the property to defendant to avoid any sort of liens or judgments that may have attached to the property in question." (*Id.*).

The Plaintiffs' own evidence submitted to support their motion for summary judgment in the District Court Litigation compels these factual determinations. For example, in an e-mail dated July 8, 2011, from Plaintiff Matthew Jackson to the Debtor, Mathew Jackson admitted that Plaintiff Velma Jackson had advised their mother to convey the Property:

> I vividly recall the meeting mommy called shortly before she died.... Velma had apparently discussed some estate issues with mommy before that meeting. Velma told us that she had advised her to make the transfer (before she died) to avoid estate taxes. Velma said that she told her to temporarily put your name on the deed and you would see that the deed was put in all of our names later. Velma said that she wanted to put the property in you name because she was concerned about credit issues that might jeopardize the property.[47]

---

**45.** D. Ct. Complaint at ¶¶ 124–146 (copy attached as Exhibit A to Debtor's Memorandum in Support of Motion to Dismiss Plaintiff's Complaint [Doc. 5–1] at 41–44).

**46.** D. Ct. Complaint at ¶¶ 158–170 (copy attached as Exhibit A to Debtor's Memorandum in Support of Motion to Dismiss Plaintiff's Complaint [Doc. 5–1] at 46–48).

**47.** Vol. 2 of Appendix to Plaintiffs' Motion for Summary Judgment in District Court Litigation at Ex. 11 [D. Ct. Doc. 29].

In an e-mail dated July 8, 2011, from plaintiff Velma Jackson to plaintiff Matthew Jackson, Velma Jackson elaborated on the reasons why she advised her mother to transfer the Property to the Debtor:

Matt, the reason that the house was put in Frances name, is so no liens or judgments from Velma, Douglas or you would be put on the property that was being left to the grandchildren. Frances did not work for herself and was more likely than you, Douglas and me to have a steady flow of income. Was it a good decision to put the house in Frances' name, "Yes", it was a terrifically good decision, because Ricky died and 1/5 of the value of the house would have been taxable to Ricky's estate, Douglas has a judgment that would have been a lien on the property, I had debts that would have been converted to judgments and then to liens on the property should I have not been judgment proof and you must answer for yourself about whether you would have caused any liens to be placed on the family property had you not been judgment proof.[48]

The evidence also contradicts the Plaintiffs' allegations that the Debtor refused to transfer the Property to the Plaintiffs. In fact, the evidence shows that the Debtor was willing to transfer the Property to the Plaintiffs, particularly after the property taxes became a burden on the Debtor, who was the only sibling paying the property taxes at the time, and who had to pay a higher tax amount because the Property was not her homestead.

In e-mails to the Plaintiffs, the Debtor explained that she could no longer bear the burden of paying the taxes on the Property and wanted to be removed as an owner of the Property. Her e-mails dated May 5, 2011, and June 27, 2011 stated:

[May 5, 2011]

It has reached a very serious situation. My funds are very tight and it is becoming increasing [sic] difficult for me to continue to pay this amount.... It was suggested [by a tax service] that going forward the taxes should be appealed and if the owner qualified for the homestead exemption that would farther reduce the taxes I have given this a lot of thought and I want my name removed from the deed and the property put in trust or what other option you all agree to.[49]

[June 27, 2011]

I have been paying $300.00 per month on the taxes but it has reached a point that I connot [sic] continue paying this amount.... It really does not make sense for me to be the only one trying to pay the taxes and insurance on a house that is not my primary residence.

I don't understand why no one wants to have this property transferred into their name. Is there something going on as a reason why you don't want any property in your names? Why is it that the people who live in the house with no mortgage and pay no rent don't care about paying the taxes on the house they live in?

. . .

I was promised this was going to be a short term and things would be set up to take the house out of my name. This statement was made over twelve years ago and still nothing has been done. I am very upset about the situation that I have been placed in and it is very upset-

48. *Id.* at Ex. 12 (quoted in Mag. R & R at 3 n.3).

49. *Id.* at Ex. 7.

ting that no care [sic] about the financial mess I have been placed in.[50]

The Debtor continued the discussion in an e-mail dated July 8, 2011, to the Plaintiffs:

> I have been e-mailing you info on the status of the taxes on the Sewickley property. As I stated in all my e-mails, I wanted my name removed from the deed and that I should not be the only person paying the taxes on the property in Sewickley.... I don't know how to state how serious this matter is and I don't understand why no one is concerned about keeping a place to live.

That e-mail prompted a furious response, also dated July 8, 2011, from Plaintiff Matthew Jackson, accusing the Debtor of many of the actions that are the subject of the Pennsylvania litigation.[51]

Plaintiff Velma Jackson—who has since clearly changed her position—responded to the accusations by stating:

> I read your email and was very sad and disappointed that you would write such a mean, dishonest email. I know you have trust and many other personal issues, but the mean things that you wrote in your email are not true and do not help solve the problem of how to get each sibling to pay his/her share of the property taxes due on the family property before we lose it.
>
> . . .
>
> Matt, saying and writing mean and untruthful things to people who are trying to do all they can to insure that you and I have a place to live and that your children have an inheritance from their grandparents is cruel and unkind.[52]

Later e-mails among the parties show that the Plaintiffs insisted on the Debtor transferring the Property—for no consideration—to a trust under which she would not be a beneficiary.[53] Because the Debtor believed that this arrangement was not their mother's intended outcome, nor particularly equitable, the Debtor insisted that the Plaintiffs buy the Debtor's share of the Property from her.[54]

As to the alleged promises, misrepresentations, and fraud, the Court concludes—just as the District Court concluded—that the Plaintiffs put forth no evidence of any misrepresentations, justifiable reliance, intent to mislead, or intent to induce justifiable reliance. (Mag. R & R at 18, 22).

The record in the District Court Litigation shows no disputes of material fact with regard to the Plaintiff's claim that the Debtor engaged in any conduct that could possibly amount to fraud or defalcation while acting in a fiduciary duty, even if § 524(a)(4) applies in a constructive trust situation. Indeed, the undisputed material facts in the record in the District Court Litigation compel the conclusion that the Debtor has no liability to the Plaintiffs for anything except, perhaps, expenses that an accounting might impose on her.

The claim of the Plaintiffs that they have a debt against the Debtor this is excepted from discharge under § 523(a)(4) is frivolous. It has no basis in law because § 523(a)(4) applies only to fiduciary duties arising under an express or statutory trust. It has no basis in fact because no evidence supports the allegations of wrongdoing that the Plaintiffs made.

The Debtor is entitled to summary judgment on the Plaintiffs' § 524(2)(4) claim.

---

50. *Id.* at Ex. 9.

51. *See id.* at Ex. 11.

52. *Id.* at Ex. 12.

53. *See id.* at Exs. 14, 18, 21, 22.

54. *See id.* at Exs. 21, 22.

## V. EFFECT OF THE COURT'S RULING

Because the Court has overruled the Plaintiffs' objections to the Debtor's discharge and no other objections were timely filed, the Debtor will receive a Chapter 7 discharge under 11 U.S.C. § 727(a). Under the "discharge injunction" of 11 U.S.C. § 524(a)(2), her discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [debt discharged under § 727(a)] as a personal liability of the debtor, whether or not discharge of such debt is waived." Under § 727(b), the discharge discharges the debtor "from all debts that arose before the date of the order for relief," [55] except as provided in § 523.

█ The Court has determined that any debt of the Debtor to the Plaintiffs is not excepted from discharge under § 523(a)(4). Unless any debt of the Debtor is excepted from discharge under another section of § 523(a) (other than paragraphs (2) and (6) [56]), therefore, the discharge injunction of § 524(a)(2) enjoins the Plaintiffs from commencing or continuing any litigation, employing process, or taking any action to collect any debt from the Debtor as a personal liability of the Debtor. The discharge injunction prevents the Plaintiffs from seeking to collect, as a personal liability of the Debtor, any amounts that the Debtor may owe as a result of any accounting.

Upon entry of the Debtor's discharge and the conclusion of this adversary proceeding, the administration of this case will be over and it will be closed. Upon the closing of the case without administration of the Debtor's interest in the Property, any interest she has will be abandoned to her by operation of law under 11 U.S.C. § 554(c).

█ The Court has not determined what, if any, interest the Debtor has in the Property or ruled on the constructive trust issues that are the subject of the District Court Litigation. The discharge injunction of § 524 will not prevent the Plaintiffs from seeking an *in rem* determination of the interest of the Debtor in the Property.

## VI. CONCLUSION

Based on, and in accordance with, the foregoing, it is hereby **ORDERED and ADJUDGED** as follows:

1. The Abstention Motion [Doc. 17] is **DENIED.**

2. Debtor's Motion to Dismiss the Abstention Motion [Doc. 25] is **DISMISSED.**

3. The Plaintiffs' Motion to Strike Defendant's Response to the Abstention Motion [Doc. 31] is **DISMISSED.**

4. The Plaintiffs' Motion to Strike the Debtor's Motion to Dismiss the Abstention Motion [Doc. 32] is **DISMISSED.**

5. The Debtor's Motion to Dismiss [Doc. 5], converted to a Motion for Summary Judgment pursuant to this Court's Order entered on July 29, 2015 [Doc. 15] and the Debtor's Motion for Summary Judgment [Doc. 33] are both **GRANTED.**

6. The Plaintiffs' Cross–Motion for Summary Judgment [Doc. 19] is **DENIED.**

---

55. The filing of a voluntary Chapter 7 petition constitutes an order for relief. 11 U.S.C. § 301(b).

56. The Plaintiffs did not timely seek a determination of an exception from discharge under paragraphs (2) and (6) of § 523(a). Accordingly, any debts of the Debtor are not excepted from discharge under those provisions. 11 U.S.C. § 523(c).

7. Pursuant to Fed. R. Civ. P. 54(b), *applicable under* Fed. R. Bankr. P. 7054, the Court will enter final judgment on all claims for relief in the Plaintiffs' Complaint [1].

8. The Court will retain jurisdiction in this proceeding following entry of final judgment on the Plaintiffs' complaint for the purposes of determining the following motions for sanctions and the request of the Debtor for attorney's fees in her Answer and will schedule an evidentiary hearing on them by separate order:

a. Debtor's Motion for Sanctions [Doc. 24];

b. Debtor's Motion Pursuant to Bankruptcy Rule 9011 [Doc. 25];

c. Plaintiffs' Motion to Strike Defendant's Rule 11 Motion [Doc. 31];

d. Plaintiffs' Motion for Sanctions [Doc. 36].